**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3592
_____

SENECA RESOURCES CORPORATION

v.

TOWNSHIP OF HIGHLAND,
Elk County, Pennsylvania;
HIGHLAND TOWNSHIP BOARD OF SUPERVISORS,
Elk County, Pennsylvania

*CRYSTAL SPRING ECOSYSTEM; HIGHLAND
TOWNSHIP MUNICIPAL AUTHORITY;
CITIZENS ADVOCATING A CLEAN HEALTHY
ENVIRONMENT, INC.,
                                        Appellants

*(Pursuant to Rule 12(a) Fed. R. App. P.)
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court No. 1-15-cv-00060
Magistrate Judge: Honorable Susan Paradise Baxter

Argued March 23, 2017

Before: SMITH, *Chief Judge*, JORDAN and ROTH,
*Circuit Judges*

(Opinion Filed: July 17, 2017)

Lindsey Schromen-Wawrin            **[Argued]**
Shearwater Law
306 West Third Street
Port Angeles, WA  98362
        *Counsel for Appellants*


Brian J. Clark
Brian C. Wauhop
Buchanan Ingersoll & Rooney
409 North Second Street
Suite 500
Harrisburg, PA  17101


Stanley Yorsz                      **[Argued]**
Buchanan Ingersoll & Rooney
301 Grant Street
One Oxford Centre, 20th Floor
Pittsburgh, PA  15219
        *Counsel for Appellee Seneca Resources Corp*

Arthur D. Martinucci              **[Argued]**
Quinn Buseck Leemhuis Toohey & Kroto
2222 West Grandview Boulevard
Erie, PA 16506
     *Counsel for Appellees Township of Highland and*
     *Highland Township Board of Supervisors, Elk*
     *County, Pennsylvania*

————————

OPINION

————————

SMITH, *Chief Judge.*

Appellants, Crystal Spring Ecosystem, Highland Township Municipal Authority, and Citizens Advocating a Clean Healthy Environment, Inc.—all represented by the Community Environmental Legal Defense Fund ("CELDF")—sought to intervene on the side of Defendant-Appellee Township of Highland (the "Township") in defense of the legality of the Highland municipal ordinance known as the "Community Bill of Rights." The Community Bill of Rights, among other things, prohibited Plaintiff-Appellee Seneca Resources Corporation from using a well to store waste from

3

fracking.[1]  The District Court[2] denied Appellants' motion to intervene, holding that the Township adequately represented Appellants' interests in defending the

---

[1] "[F]racking[] is a method used to stimulate production of a well.  A specially blended liquid is pumped down the well and into a formation under pressure high enough to cause the formation to crack open, forming passages through which oil or gas can flow into the wellbore." *T.W. Philips Gas & Oil Co. v. Jedlicka*, 42 A.3d 261, 264 n.1 (Pa. 2012); *see also* U.S. EPA, *Hydraulic Fracturing for Oil and Gas: Impacts from the Hydraulic Fracturing Water Cycle on Drinking Water Resources in the United States* 3–4 (2016) (executive summary), http://ofmpub.epa.gov/eims/eimscomm.getfile?p_download_id=530285.

[2] On March 26, 2015, the parties filed consents to trial and jurisdiction before a magistrate judge.  *See Seneca Res. Corp. v. Highland Township*, No. 15-60 Erie, 2016 WL 1213605, at *1 n.1 (W.D. Pa. Mar. 29, 2016) ("[T]he parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment."); 28 U.S.C. § 636(c).  Because the Magistrate Judge has the full power of the District Court, we refer to the Magistrate Judge as the District Court where appropriate.

Community Bill of Rights. Appellants moved for reconsideration. While the motion for reconsideration was pending, the Township repealed the Community Bill of Rights and entered into a settlement with Seneca that culminated in a consent decree adopted by the District Court. Appellants filed a motion for reconsideration of the Consent Decree, which the District Court denied along with Appellants' motion for reconsideration of their motion to intervene.

Appellants now appeal four orders: (1) the denial of their motion to intervene, (2) the denial of the motion for reconsideration of their motion to intervene, (3) the District Court's adoption of the Consent Decree, and (4) the denial of the Appellants' motion for reconsideration of the Consent Decree. Appellants' original motion to intervene is now moot because there is no longer an ordinance to defend. In their reply brief and at oral argument, Appellants fell back on the argument that they had a right to intervene because the Consent Decree purportedly "establish[es] . . . the legality or illegality of [Appellants'] protected rights." Appellants' Reply Br. 8. But the Consent Decree does not bind any of the Appellants nor does it deprive them of any rights after the Community Bill of Rights has been repealed. Because Appellants cannot intervene, they are nonparties. Because they are nonparties, they cannot appeal the Consent Decree. Therefore, we will affirm the District Court's order denying Appellants' motion for

5

reconsideration of the order denying intervention. We lack jurisdiction to review the remaining three orders because of mootness and standing issues.

## BACKGROUND

## I. ACTORS

Plaintiff-Appellee Seneca Resources Corporation is a Pennsylvania corporation engaged in oil and natural gas exploration and production. Seneca sought to convert a natural gas well in Highland Township into a Class II underground injection control well in which to store waste from fracking.

Defendants-Appellees are Township of Highland and the Highland Board of Supervisors. Highland is a township located in Elk County, Pennsylvania. The Board of Supervisors is its three-person governing body. *See* 53 P.S. § 65601 ("Townships shall be governed and supervised by boards of supervisors. Boards of supervisors shall consist of three members or, if approved by the electors under section 402(b), five members." (footnote omitted)).

CELDF advocates that communities pass laws that assert community rights against corporations and others engaged in activity disfavored by members of the

6

community.[3]   CELDF appears to have drafted the ordinance at issue here.   CELDF represented the Township earlier in this litigation, and a different CELDF lawyer has represented Appellants.

Appellants are Crystal Spring Ecosystem, Highland Township Municipal Authority, and Citizens Advocating a Clean Healthy Environment, Inc.

Crystal Spring Ecosystem "encompasses [a natural] spring, as well as the surrounding hillside and riparian forests, soils, and bedrocks, [and] the residents of James City who drink from Crystal Spring." Appellants' Br. 21; *accord* App.197–98 (Mot. Intervene) ¶ 14.[4]

---

[3] *See, e.g.*, Uma Outka, *Intrastate Preemption in the Shifting Energy Sector,* 86 U. Colo. L. Rev. 927, 959–60 (2015) (referring to CELDF-sponsored antifracking legislation in Pittsburgh, Pa., Mora, N.M., and Lafayette, Colo.); Catherine J. Iorns Magallanes, *Foreword: New Thinking on Sustainability*, 13 N.Z. J. Pub. & Int'l L. 1, 12 (2015) ("160 communities in the United States have adopted such rules that have been drafted by the CELDF . . . .").

[4] Appellants claim that the Ecosystem has standing under the Community Bill of Rights.  Because of the way this appeal is terminated and because Citizens Advocating a

Highland Township Municipal Authority is a municipal government agency that provides water from Crystal Spring for unincorporated James City, a city within Highland Township.

Citizens Advocating a Clean Healthy Environment, Inc. ("CACHE") is a nonprofit corporation that "is, and has been, the primary advocate" for the Community Bill of Rights. App.197 (Mot. Intervene) ¶¶ 9–13. Its three directors are residents of Highland Township who "own property in James City connected to the Municipal Authority water supply." App.197 (Mot. Intervene) ¶ 11.

---

Clean Healthy Environment, Inc., would be a proper intervenor were it to meet the standards under Rule 24(a) of the Federal Rules of Civil Procedure, we do not need to resolve whether an ecosystem can have standing or is a proper party under Rule 17 of the Federal Rules of Civil Procedure. *Cf. Hawksbill Sea Turtle v. FEMA*, 126 F.3d 461, 466 n.2 (3d Cir. 1997) ("It is not disputed that the human plaintiffs have standing to sue under the ESA, and therefore we need not consider the standing to sue of the animals named as plaintiffs.").

## II. FACTUAL AND PROCEDURAL HISTORY

On January 9, 2013, the Township enacted a far-reaching ordinance that, among other things, prohibited "disposal injection wells" from existing within Highland. App.046–50 (2013 Ordinance).

On June 17, 2014, the EPA issued a final, ten-year permit to Seneca to allow it to operate a Class II-D injection well. Part 1.A of the permit says, "Issuance of this permit does not . . . authorize . . . any infringement of State or local law or regulations." App.082 (Permit).

Sometime between November 3, 2014, and January 8, 2015, the Highland Township Board of Supervisors wrote to the EPA, stating that the EPA permit was invalid under the Township's ordinance. *See* App.095–96 (Letter).

Seneca sued the Township and the Board of Supervisors on February 18, 2015, alleging that the ordinance was invalid. Seneca sought damages, attorneys' fees, and an injunction prohibiting the Township from enforcing the ordinance. The Township and the Board of Supervisors were represented by CELDF lawyers.

On March 24, 2015, the Township adopted the Community Bill of Rights as an amendment to the January 9, 2013 ordinance. The Community Bill of

Rights established a right to water and clean air for persons, natural communities and ecosystems[5] and stated that any resident could enforce an ecosystem's rights "to exist and flourish." App.119 (Community Bill of Rights). Section 3 of the Community Bill of Rights made it illegal for any corporation or government to deposit waste from "oil and gas extraction" "within Highland Township" and further claimed to invalidate any "permit, license, privilege, charter, or other authority" that violated the Community Bill of Rights. App.120

---

[5] The Community Bill of Rights provided that:

> All residents, natural communities and ecosystems in Highland Township possess the right to sustainably access, use, consume, and preserve water drawn from natural water cycles that provide water necessary to sustain life within the Township.
>
> . . . All residents, natural communities, and ecosystems in Highland Township possess the right to breathe air untainted by toxins, carcinogens, particulates, and other substances known to cause harm to health.

App.119 (Community Bill of Rights § 2(a)–(b)).

10

(Community Bill of Rights). Section 4(b) of the Community Bill of Rights stated that any resident could enforce the rights of the Township. App.120 (Community Bill of Rights). Section 4(c) of the Community Bill of Rights stated that any resident of Highland Township could "enforce or defend the rights of ecosystems." App.120 (Community Bill of Rights). Section 5(a) of the Community Bill of Rights stated that "[c]orporations that violate this Ordinance, or that seek to violate this Ordinance, shall not be deemed to be 'persons'" and that those corporations did not have the "power to assert state or federal preemptive laws in an attempt to overturn" the Community Bill of Rights. App.120 (Community Bill of Rights). The Community Bill of Rights called for "amendment of the Pennsylvania Constitution and the federal Constitution to recognize a right to local self-government free from governmental preemption and or nullification by corporate 'rights.'" App.121 (Community Bill of Rights).

On April 6, 2015, Seneca filed an amended complaint. The Amended Complaint took note of the Community Bill of Rights and further alleged that the Township told the Pennsylvania Department of Environmental Protection that the original ordinance would preclude the DEP from issuing a state permit. Seneca claimed that the Township's communication with the DEP was causing the DEP to delay issuance of the state permit. The Amended Complaint alleged the same

11

claims and requested the same relief as the original complaint. *See* App.106–15 (Am. Compl.).

On August 11, 2015, Appellants, represented by a different CELDF lawyer than the lawyer who represented the Township and the Board of Supervisors, filed their motion to intervene pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure in order to defend the legality of the ordinance. *See* Oral Arg. at 7:04 ("[Appellants] tried to come into this case on the side of the Government with the interests of defending the ordinance . . . .").

On December 31, 2015, one of the three members of the Board of Supervisors died.

On March 29, 2016, the District Court denied the Appellants' motion to intervene because Appellants failed to show that the Township and the Board of Supervisors did not adequately represent Appellants' interests. *See Seneca Res. Corp. v. Highland Township*, No. 15-60 Erie, 2016 WL 1213605, at *2–3 (W.D. Pa. Mar. 29, 2016).

On April 26, 2016, Appellants moved for reconsideration of the March 29, 2016 order denying their motion to intervene. Appellants alleged there had been "a material change in the relevant facts" because "the composition of the Highland Township Board of Supervisors changed." App.317 (Mot. Reconsideration

Denial Mot. Intervene). According to Appellants, the new replacement supervisor expressed the view that the Community Bill of Rights was likely invalid and therefore the Board majority was opposed to continuing to defend the Community Bill of Rights. Under these new circumstances, Appellants argued, the Township would no longer adequately represent Appellants' interests. App.318–19 (Mot. Reconsideration Denial Mot. Intervene). On May 13, 2016, a CELDF lawyer filed a response to the motion for reconsideration on behalf of the Township and the Board of Supervisors. In the response, the Township and the Board said that they supported the motion for reconsideration because "it is unlikely that the Township's aggressive defense of the Ordinance will continue." App.345 (Response).

On May 30, 2016, CELDF moved to withdraw as counsel of record for the Township and its Board of Supervisors. CELDF claimed that Defendants "have ceased to communicate with their counsel, despite multiple attempts by counsel to contact the clients," which apparently included the period during which Defendants filed their "response" supporting Appellants' motion for reconsideration. App.348–50 (Mot. Withdrawal). On June 2, 2016, CELDF informed the court that Defendants said they were hiring new counsel.

The Board of Supervisors repealed the Community Bill of Rights on the night of August 10, 2016.

13

The following day, Seneca and Defendants filed a stipulation and consent decree under which the Township stipulated that much of the Community Bill of Rights was "an impermissible exercise of Highland's legislative authority," "unconstitutional," or "unenforceable." App.388–89 (Stipulation and Consent Decree) ¶ 13(a)–(g).[6]  Additionally, under the Consent Decree, the

---

[6] The relevant portions of the stipulation and consent decree state as follows:

a. Section 3 of the Highland Community Bill Of Rights Ordinance, as amended (Amendment and Revision of Ordinance No. 1-9 of 2013) constitutes an impermissible exercise of Highland's legislative authority and is therefore invalid and unenforceable;

b. Section 3 of the Highland Community Bill Of Rights Ordinance, as amended (Amendment and Revision of Ordinance No. 1-9 of 2013) is also invalid and unenforceable in that it is *de jure* exclusionary in seeking to prohibit entirely the exercise of a legitimate and lawful business activity (to-wit, the development of oil and gas resources and the management of related waste materials);

14

c. Section 4(b) and (c) of the Highland Community Bill Of Rights Ordinance, as amended (Amendment and Revision of Ordinance No. 1-9 of 2013) constitute an impermissible exercise of Highland's legislative authority and are therefore invalid and unenforceable;

d. Sections 5(a) and (b) of the Highland Community Bill Of Rights Ordinance, as amended (Amendment and Revision of Ordinance No. 1-9 of 2013), are unenforceable as preempted by state law;

e. Section 5(a) of the Highland Community Bill Of Rights Ordinance is, on its face, unconstitutional (under both the United States Constitution and the Constitution of the Commonwealth of Pennsylvania);

f. Section 6 of the Highland Community Bill Of Rights Ordinance is, on its face, unconstitutional (under both the United States Constitution and the Constitution of the Commonwealth of Pennsylvania);

g. Section 7 of the Highland Community Bill Of Rights Ordinance is, on its face, unconstitutional

15

Township and the Board of Supervisors withdrew their objection to Seneca's DEP permit applications and withdrew their counterclaims, and Seneca withdrew its counterclaims against the Township and the Board of Supervisors. App.389–90 (Stipulation and Consent Decree) ¶ 13(i)–(*l*). The parties also requested that the Court "adopt . . . as its findings and opinion regarding the merits of Seneca's claims" the parties' stipulations about why specific parts of the Community Bill of Rights were unlawful. *See* App.390 (Stipulation and Consent Decree) ¶ 16.

That same day, the District Court entered an order designated as the final judgment. The order adopted Paragraph 13(a)–(g) of the Consent Decree as the Court's findings and opinion. Paragraph 13(a)–(g) were the portions of the Consent Decree that concluded that much of the Community Bill of Rights was unenforceable.

On August 15, 2016, Appellants filed a motion for reconsideration of final judgment arguing that the

---

(under both the United States Constitution and the Constitution of the Commonwealth of Pennsylvania); . . . .

App.388–89 (Stipulation and Consent Decree) ¶ 13(a)–(g).

16

Township and the Board of Supervisors were not considering the long-term interests in clean water, that Appellants had rights to be parties in the case, and that Appellants would have participated in settlement negotiations.

On August 16, 2016, the District Court denied Appellants' motion for reconsideration of the denial of their motion to intervene. Before ruling on the motion to intervene in this case, the District Court denied intervention in a similar case, *Pennsylvania General Energy Co., LLC v. Grant Township*, No. 14-cv-209ERIE, 2015 WL 6002163 (W.D. Pa. Oct. 14, 2015). In *Pennsylvania General Energy*, we affirmed the denial of the motion to intervene in a nonprecedential order. Without addressing changed circumstances or Appellants' new arguments in this case, the District Court explained that our affirmance in *Pennsylvania General Energy* gave it confidence in its original decision to deny intervention to Appellants. *See* App.022–23 (Order).

That same day, the District Court denied Appellants' motion for reconsideration of the order approving the Consent Decree because the Appellants were not parties.

On September 12, 2016, Appellants appealed the following: the March 29, 2016 order denying the motion to intervene; the August 16, 2016 order denying the

17

motion to reconsider the order denying the motion to intervene; the August 12, 2016 final order adopting the Consent Decree; and the August 16, 2016 memorandum opinion denying reconsideration of the adoption of the Consent Decree.

Although litigation in the District Court relating to the Community Bill of Rights has concluded, a second, very similar case is now before the same District Court. On November 8, 2016, the Township adopted a Home Rule Charter that prevented Seneca from storing fracking waste in Highland.[7] *See* Compl. ¶ 1, *Seneca Res. Corp. v. Highland Township*, No. 16-289 (W.D. Pa. Nov. 30, 2016), ECF No. 1; *see also See* Compl. Ex. A § 401, No. 16-289 (W.D. Pa. Nov. 30, 2016), ECF No. 1-1 ("It shall be unlawful within Highland Township for any corporation or government to engage in the depositing of waste from oil and gas extraction."). In response to the

---

[7] The Home Rule Charter was apparently passed in a popular vote, 55% to 45%, with 94 citizens turning out. *See* Katie Weidenboerner, *Highland Township Votes in Home Rule Charter*, Courier Express (DuBois, Pa.) (Nov. 9, 2016), http://www.thecourierexpress.com/news/local/highland-township-votes-in-home-rule-charter/article_833142ae-b155-55fa-8477-5864bde37281.html.

18

Home Rule Charter, Seneca brought a separate lawsuit against the Township and the Board of Supervisors. In that litigation, two of the Appellants—Citizens Advocating a Clean Healthy Environment, Inc., and the Crystal Spring Ecosystem—have moved to intervene.

## JURISDICTION

The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367. Appellants claim we have appellate jurisdiction to review the District Court's decisions under 28 U.S.C. § 1291. As discussed below, fatal standing or mootness problems prevent us from taking appellate jurisdiction except to the extent that we hold that the District Court did not abuse its discretion when it denied Appellants' motion for reconsideration of the order denying intervention.

## STANDARD OF REVIEW

Our "continuing obligation" to assure that we have jurisdiction requires that we raise issues of standing and mootness sua sponte. *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 211 (3d Cir. 2007); *see also Chong v. Dist. Dir., INS*, 264 F.3d 378, 383 (3d Cir. 2001). We assess our own appellate jurisdiction in the first instance. *Cf. Freedom from Religion Found., Inc. v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 475 n.4 (3d Cir. 2016) ("We exercise de novo review over legal conclusions concerning standing and mootness.").

19

We review denials of motions for reconsideration of denials of motions for intervention as of right under a "more stringent" abuse of discretion review. *Harris v. Pernsley*, 820 F.2d 592, 597 (3d Cir. 1987); *see McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 245 n.9 (3d Cir. 2014) ("Because an appeal from a denial of a Motion for Reconsideration brings up the underlying judgment for review, the standard of review varies with the nature of the underlying judgment." (quoting *McAlister v. Sentry Ins. Co.*, 958 F.2d 55, 552–53 (3d Cir. 1992))); *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998) ("We will reverse a district court's determination on a motion to intervene as of right if the court has abused its discretion by applying an improper legal standard or reaching a conclusion we are confident is incorrect." (citing *Harris*, 820 F.2d at 597)).

## ANALYSIS

There are two sets of rulings Appellants dispute: (1) two rulings on motions relating to intervention and (2) two rulings on motions relating to the Consent Decree. The second set is linked to the first because, to appeal rulings related to the Consent Decree, Appellants must, among other things, be "part[ies] . . . aggrieved by the district court's judgment." *Armotek Indus., Inc. v. Emp'rs Ins. of Wausau*, 952 F.2d 756, 759 n.3 (3d Cir. 1991) (emphasis omitted). Appellants are not parties.

20

Appellants contend that they should have been parties because the District Court should have granted their motion to intervene. Their main claim to intervene in the District Court and their only claim in their opening brief here relates to their interest in defending the Community Bill of Rights. Because the Community Bill of Rights has been repealed, this argument is moot.[8] In a

_____

[8] Were we to reach the merits of the issue as to whether Appellants could intervene to defend the ordinance, we would have serious doubts that the Township of Highland's decision to seek a settlement made them inadequate representatives of the Appellants' interests. We have repeatedly stated that a party is entitled to settle its lawsuit without inviting intervenors where settlement is the only reasonable course of action. *See, e.g.*, *Brody ex rel. Sugzdinis v. Spang*, 957 F.2d 1108, 1123–24 (3d Cir. 1992) ("The contention that the school officials have not actively litigated this case must be rejected as a basis for finding inadequate representation. . . . Defendants are fully entitled to choose to negotiate a consent decree rather than litigate the case on the merits."); *Pennsylvania v. Rizzo*, 530 F.2d 501, 505 (3d Cir. 1976) ("Even if the injunction had been characterized as a consent decree, inadequate representation would not be established ipso facto; any case, even the most vigorously defended, may culminate in a consent decree. As the Seventh Circuit has observed, a consent decree may be

21

simply 'the inescapable legal consequence of application of fundamental law to [the] facts. That [intervenors] would have been less prone to agree to the facts and would have taken a different view of the applicable law does not mean that the [defendants] did not adequately represent their interests in the litigation.'" (quoting *United States v. Bd. of Sch. Comm'rs*, 466 F.2d 573, 575 (7th Cir. 1972))).

At oral argument, Appellants' counsel essentially conceded that the Amended Ordinance was unlawful under existing law:

> THE COURT: You would agree, wouldn't you, that there are some portions of the Amended Ordinance here that clearly were unlawful?

> COUNSEL: Your Honor, those are the issues that we'd like to litigate before the Court but unfortunately we [UNINTELLIGIBLE]—

> THE COURT: You think that there's an arguable position to be taken that there was no preemption in some of the laws here.

22

sentence in their reply brief and at length at oral argument, Appellants argued they should be able to intervene to challenge the District Court's adoption of Paragraph 13(a)–(g) of the Consent Decree. Appellants argue that the District Court could not adopt findings and holdings to which the parties agreed. Because the Consent Decree does not bind Appellants or deprive them of rights, the District Court did not abuse its discretion in denying their motion for reconsideration of the denial of intervention to challenge those aspects of the Consent Decree.

---

> COUNSEL: Your Honor, that would be like being in 1907 and arguing against *Lochner*.
>
> THE COURT: Taking away corporation's personhood?
>
> COUNSEL: Again, that would be like being in 1900, arguing against separate but equal. So, yes, we're challenging corporate constitutional rights, making a good faith claim for *changing the law*.

Oral Arg. at 8:20 (emphasis added).

23

Finally, because Appellants cannot intervene for either of the two reasons they advanced for intervention, they lack standing to challenge the Consent Decree.

## I. APPELLANTS CANNOT INTERVENE

Appellants cannot intervene either to save the ordinance or to challenge the adoption of the Consent Decree.

## A. Intervention To Defend the Ordinance Is Moot

"The doctrine of mootness requires that 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Brown v. Phila. Hous. Auth.*, 350 F.3d 338, 343 (3d Cir. 2003) (quoting *N.J. Turnpike Auth. v. Jersey Cent. Power & Light*, 772 F.2d 25, 31 (3d Cir. 1985)).

The party asserting mootness bears a heavy burden to show the case is moot. *See Burns v. PA Dep't of Corr.*, 544 F.3d 279, 284 (3d Cir. 2008) ("Such lack of specificity, along with the fact that the Department of Corrections urges us to refrain from vacating the favorable decision entered by the District Court, counsels against the conclusion that the Appellees have met the '"heavy," even "formidable" burden' that a party alleging mootness must bear." (quoting *United States v. Gov't of V.I.*, 363 F.3d 276, 285 (3d Cir. 2004))).

After the party asserting mootness bears that burden, the burden shifts to the party opposing mootness to explain why the case is not moot. *See Richardson v. Bledsoe*, 829 F.3d 273, 283 n.4 (3d Cir. 2016) ("Richardson has not carried his burden of showing that he fits into either the 'capable of repetition yet evading review' or the 'inherently transitory' exceptions to mootness.").

On August 10, 2016, the Board repealed the ordinance that Appellants wanted to defend. Appellants originally stated that their purpose for seeking to intervene was to defend the Community Bill of Rights. Appellants have never argued that this Court could revive the Community Bill of Rights or that Appellants had any right to prevent the repeal. *Cf. Util. Contractors Ass'n of N.J., Inc. v. Toops*, 507 F.2d 83, 86 (3d Cir. 1974) ("In the absence of this lawsuit, had any of the municipalities chosen voluntarily to change its building code, the appellants' monetary interests would not have conferred legal standing to prevent such governmental action."). Therefore, Appellees have met their burden of showing Appellants' defense of the Community Bill of Rights would be moot.

Appellants raise three defenses to mootness: (1) that the intervention issue is "capable of repetition yet evading review"; (2) that this lawsuit is a matter of "public interest"; and (3) that we can ignore mootness

25

because "the resolution on the merits" of the intervention issue "is clear." Appellants' Reply Br. 5–7. All of these fail. Therefore, Appellants cannot carry their burden to explain why the case is not moot.

First, the issue here does not "evade review." An issue evades review when the issue cannot be resolved in time to fully contest the challenged action. *See Richardson*, 829 F.3d at 283 n.4 ("Richardson has not shown . . . that the amount of time an inmate spends in the SMU Program is typically so brief as to evade review by becoming moot before a District Court can rule on class certification."). Appellants argue that they are unable to get a court ruling on their motions to intervene in subsequent litigation because a case *could* become moot before any ruling is issued. For instance, Appellees could settle the Home Rule Charter litigation, *Seneca Res. Corp. v. Highland Township*, No. 16-289 (W.D. Pa.), before the District Court rules on the motion to intervene in that case. Appellees' argument is speculative at best. There is enough time for the District Court to rule on CACHE and the Ecosystem's motion to intervene in the Home Rule Charter litigation. *See, e.g., County of Morris v. Nationalist Movement*, 273 F.3d 527, 534 (3d Cir. 2001) ("The District Court conducted hearings on an expedited basis and rendered an opinion in time to guide the parties' conduct during that event. With respect to any dispute that might arise in connection with future Independence Day activities, the parties, if

26

unable to resolve their differences, would have ample opportunity to bring a new lawsuit and to develop a record reflective of the particular circumstances attendant on that dispute."). Thus, the issue is not so fleeting as to evade review.

Second, Appellants cite a dated, out-of-circuit case for the proposition that the public interest in the resolution of a case can be an exception to mootness. *See Alton & S. Ry. Co. v. Int'l Ass'n of Machinists*, 463 F.2d 872, 880 (D.C. Cir. 1972) ("But when the particular controversy has expired, so that there is no duty or obligation of the court to maintain the appeal, an application of the doctrine permitting maintenance of appeals of recurring controversies in cases of public interest necessarily identifies judicial latitude."). That case also appears to be about the "capable of repetition yet evading review" exception. *See id.* at 878 ("[T]here is a strong counter-current of doctrine under which the court continues an appeal in existence, notwithstanding the lapse in time of the particular decree or controversy, when the court discerns a likelihood of recurrence of the same issue, generally in the framework of a 'continuing' or 'recurring' controversy, and "public interest" in maintaining the appeal."). Were that case to stand for a broader "public interest" principle, it would not avail Appellants. The Third Circuit has never adopted a standalone public interest exception to mootness. *See N.J. Turnpike Auth.*, 772 F.2d at 30 ("Although we

27

recognize that the substantive issues are of considerable public interest, we believe that this alone does not impart Article III justiciability when there is 'no reasonable expectation that the wrong will be repeated.'" (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953))); *Campbell Soup Co. v. Martin*, 202 F.2d 398, 399 (3d Cir. 1953) ("[E]ven if this were a subject of public interest we do not think that the exception [to mootness] could be applied in a federal court.").

Third, Appellants argue that we can ignore mootness when "the resolution on the merits is clear." Appellants' Reply Br. 6 (quoting *Pickus v. U.S. Bd. of Parole*, 543 F.2d 240, 242 (D.C. Cir. 1976) (internal quotation mark omitted)). But "[u]nder Article III of the Constitution, this Court has no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Whiting v. Krassner*, 391 F.3d 540, 544 (3d Cir. 2004) (quoting *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992)) (internal quotation marks omitted); *see also Elliott v. Archdiocese of N.Y.*, 682 F.3d 213, 219 (3d Cir. 2012) (explaining that we cannot opine on a case over which we have no jurisdiction). Thus, even were the resolution of Appellants' original intervention motion glaringly obvious, we cannot rule on it because it is moot.

28

**B. The District Court Did Not Abuse Its Discretion in Denying the Appellants' Motion To Intervene To Challenge the Consent Decree**

Perhaps recognizing that they could no longer rely on their interests in defending the Community Bill of Rights, Appellants now focus heavily on the District Court's adoption of part of Paragraph 13 of the Consent Decree as the basis for their right to intervene.[9] The District Court "adopt[ed] as its findings, and as the opinion and order of this Court, those matters stipulated to in ¶¶13(a)-(g) of the Stipulation and Consent Decree." App.021 (Order, *Seneca Res. Corp. v. Highland Township*, No. 1:15-cv-60-SPB (W.D. Pa. Aug. 12,

---

[9] Appellants raised the issue that they should have been allowed to intervene because the District Court lacked power to adopt the Consent Decree for the first time before us in their reply brief. *See* Appellants' Reply Br. 8. As such, we need not consider it. *See, e.g.*, *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 139 n.8 (3d Cir. 2017) (explaining that we could ignore an argument raised fleetingly in the district court and for the first time before us in a reply brief). We do so because Appellants' interest in the Consent Decree is an issue of law and their concerns about ultra vires district court action are important.

2016), ECF No. 84).  In turn, Paragraph 13(a)–(g) stated that the parties "stipulate and agree" that various sections of the Community Bill of Rights were invalid for various reasons.  App.388–89 (Stipulation and Consent Decree) ¶ 13(a)–(g).

Appellants now claim that they must be allowed to intervene because the portion of the District Court's order that adopted Paragraph 13(a)–(g) "establish[es] . . . the legality or illegality of [Appellants'] protected rights."  Appellants' Reply Br. 8.  More specifically, Appellants argue that the District Court lacked the power to enter that order because the parties were no longer adverse to each other when the Consent Decree was adopted.

We cannot reach that argument because the District Court did not abuse its discretion in denying Appellants' motion to reconsider the order denying their motion to intervene.  Appellants do not have a legally protectable interest in the purportedly substantive elements of the Consent Decree sufficient to allow them to intervene to argue that the case was moot when the Consent Decree was adopted.

"To justify intervention as of right, the applicant must have an interest 'relating to the property or transaction which is the subject of the action' that is 'significantly protectable.'"  *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998) (quoting

*Donaldson v. United States*, 417 U.S. 517, 531 (1971), *superseded on other grounds by* 26 U.S.C. § 7609 *as stated in Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310, 316 (1985)); *accord* Fed. R. Civ. P. 24(a)(2). "It is not sufficient that the claim be incidentally affected; rather, there must be 'a tangible threat' to the applicant's legal interest. . . . [T]his factor may be satisfied if, for example, a determination of the action in the [proposed intervenors'] absence will have a significant stare decisis effect on their claims, or if the [proposed intervenors'] rights may be affected by a proposed remedy." *Brody ex rel. Sugzdinis v. Spang*, 957 F.2d 1108, 1123 (3d Cir. 1992) (citation omitted) (quoting *Harris v. Pernsley*, 820 F.2d 592, 601 (3d Cir. 1987)); *see also Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 226–27 (3d Cir. 2005).

The Consent Decree does not establish Appellants' legal rights. Were Appellants to find themselves in a position to argue the merits of the Community Bill of Rights (or a law like the Community Bill of Rights), Appellants would not be barred by (1) estoppel, (2) stare decisis, (3) judicial consequences of the Consent Decree, or (4) any contractual consequences largely because Appellants were not parties to the Consent Decree. Because the Consent Decree does not—and cannot—affect Appellants' rights, the District Court did not abuse it discretion in denying Appellants' motion for reconsideration of the denial of the motion to intervene.

31

First, there are no estoppel consequences to Appellants here because Appellants were not parties to this case and have not had a full and fair opportunity to litigate any issue regarding the merits of the case. *See, e.g.*, *Peloro v. United States*, 488 F.3d 163, 175 (3d Cir. 2007) ("For defensive collateral estoppel—a form of non-mutual issue preclusion—to apply, the party to be precluded must have had a 'full and fair' opportunity to litigate the issue in the first action." (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 328, 332 (1979)); *Office of Disciplinary Counsel v. Kiesewetter*, 889 A.2d 47, 50–51 (Pa. 2005) (requiring "the party against whom the plea is asserted was a party or in privity with a party in the prior case" and "the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding"). Therefore, the District Court's declaration does not estop any party from defending the Ordinance except potentially the Township and the Board of Supervisors.

Second, stare decisis does not affect Appellants here because "[a] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (quoting 18 James W. Moore et al., *Moore's Federal Practice* § 134.02[1][d] (3d ed. 2011)); *accord Daubert v. NRA Grp., LLC*, --- F.3d ---, 2017 WL

32

2836808, at *8 (3d Cir. July 3, 2017); *see also Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366, 1371 (3d Cir. 1991) ("[I]t is clear that there is no such thing as 'the law of the district.'"); *Ashley v. City of Jackson*, 464 U.S. 900, 902 (1983) (Rehnquist, J., dissenting from denial of certiorari) ("The decree may be scrutinized by the judge for fairness prior to his approval, but there is no contest or decision on the merits of the issues underlying the lawsuit. Such a decree binds the signatories, but cannot be used as a shield against all future suits by nonparties seeking to challenge conduct that may or may not be governed by the decree.").

Third, there are no judicial consequences to Appellants flowing from the Consent Decree. That is, Appellants could not be held in contempt for violating the Consent Decree because, on its face, "the consent decree here does not bind [Appellants] to do or not to do anything, nor does it impose any legal obligations on [Appellants]." *Johnson v. Lodge #93 of the Fraternal Order of Police*, 393 F.3d 1096, 1107 (10th Cir. 2004).[10]

---

[10] For this reason, even if Appellants were parties, they would lack standing to challenge the consent decree. "The general rule is that a nonsettling party has no standing to appeal a consent decree which does not bind him and interferes with no legal relationship between the

33

Fourth, there are no contractual consequences of the Consent Decree for Appellants. "[U]nder Pennsylvania law, a consent decree is an agreement only between parties and does not bind or preclude the claims

---

nonsettling party and the settling parties, even though the nonsettling party may have sustained some economic loss as a result of the consent decree." *Milonas v. Williams*, 691 F.2d 931, 944 (10th Cir. 1982) (citing *Util. Contractors Ass'n of N.J., Inc. v. Toops*, 507 F.2d 83 (3d Cir. 1974)); *see also In re Sch. Asbestos Litig.*, 921 F.2d 1330, 1332 (3d Cir. 1990) ("To establish standing to appeal a settlement, a non-settling defendant may not merely claim an interest in the lawsuit but must show some cognizable prejudice to a legal relationship between it and the settling parties.").

We have held that intervenors do not need to show Article III standing where a party on the same side has Article III standing, *see King v. Governor of N.J.*, 767 F.3d 216, 245–46 (3d Cir. 2014), *cert. denied sub nom. King v. Christie*, 135 S. Ct. 2048 (2015), but "an intervenor's right to continue a suit in the absence of the party on whose side intervention was permitted is contingent upon a showing by the intervenor that he fulfills the requirements of Art. III," *Diamond v. Charles*, 476 U.S. 54, 68 (1986).

of non-parties." *Sullivan v. City of Pittsburgh*, 811 F.2d 171, 181 (3d Cir. 1984) (citing *Sabatine v. Commonwealth*, 442 A.2d 210 (Pa. 1981)).[11] Appellants are nonparties.

Because the Consent Decree does not impair Appellants' ability to protect any interest they may have in defending laws like the Community Bill of Rights, the District Court did not abuse its discretion in denying the

---

[11] Therefore, if the consent decree did encroach on Appellants' rights, they could bring a collateral attack. *See Martin v. Wilks*, 490 U.S. 755, 763–65 (1989) (holding that allowing collateral attacks by nonparties on consent decrees was a "principle" that was "incorporat[ed]" into the Federal Rules of Civil Procedure), *superseded by statute for Title VII purposes as recognized in United States v. City of Detroit*, 712 F.3d 925, 933 (6th Cir. 2013); *see also United States v. City of New York*, 198 F.3d 360, 366 (2d Cir. 1999) ("Those who are not parties to a consent decree are free to challenge the decree and actions taken under it." (citing *Martin*, 490 U.S. at 762); *Interfaith Cmty. Org. Inc. v. PPG Indus., Inc.*, 702 F. Supp. 2d 296, 313 n.22 (D.N.J. 2010) ("It appears the general principle underlying *Wilks* remains . . . .").

35

motion for reconsideration of the denial of the motion to intervene.

## II. APPELLANTS LACK STANDING TO CHALLENGE THE CONSENT DECREE

Because Appellants were not permitted to intervene, they did not become parties to this lawsuit. Because Appellants are not parties to this lawsuit, they may not challenge the Consent Decree. *See, e.g.*, *Brody ex rel. Sugzdinis v. Spang*, 957 F.2d 1108, 1113 (3d Cir. 1992) (noting that the Third Circuit dismissed the appeal of a consent decree by attempted intervenors for lack of appellate jurisdiction and citing *Pennsylvania v. Rizzo*, 530 F.2d 501, 508 (3d Cir. 1976), for the proposition that an "appellant must have been granted permission to intervene in order to appeal merits of case"); *cf. Diamond v. Charles*, 476 U.S. 54, 63–64 (1986) ("By not appealing the judgment below, the State indicated its acceptance of that decision, and its lack of interest in defending its own statute. The State's general interest may be adverse to the interests of appellees, but its failure to invoke our jurisdiction leaves the Court without a 'case' or 'controversy' between [intervenor-]appellees and the State of Illinois." (footnote omitted)); *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 229 (3d Cir. 2016) ("We conclude that, for purposes of appeal, Appellants were no longer 'parties' to the case after they were dismissed without prejudice from Halle's

36

proceeding. Appellants therefore cannot pursue an appeal from Steven Halle's individual judgment." (citation omitted)).

Appellants focus on the fact that we have held that we lacked jurisdiction over an appeal on the merits when an appellant is "*properly* denied the status of intervenor." *Pennsylvania v. Rizzo*, 530 F.2d 501, 508 (3d Cir. 1976) (emphasis added). They argued that because they were improperly denied the right to intervene, these holdings do not apply to them. Because, as we held above, Appellants were not improperly denied the right to intervene, Appellants' argument fails. We have no appellate jurisdiction to review the Consent Decree.

## CONCLUSION

Appellants' motion to intervene is moot. The District Court's denial of the motion for reconsideration of the order denying Appellants' motion to intervene was not an abuse of discretion. Therefore, Appellants are nonparties and lack standing to challenge the Consent Decree. Accordingly, we will affirm the judgment of the District Court relating to the denial of the motion for reconsideration of the denial of intervention and dismiss the remainder of this appeal for lack of jurisdiction.