PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2354
_____

WAYNE LAND AND MINERAL GROUP, LLC

v.

DELAWARE RIVER BASIN COMMISSION

MAYA VAN ROSSUM, The Delaware Riverkeeper;
DELAWARE RIVERKEEPER NETWORK
(Intervenors in District Court)


*SENATORS JOSEPH B. SCARNATI, III; LISA
BAKER; GENE YAW,
Appellants

*Pursuant to Fed. R. App. P. Rule 12(a)
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D. C. No. 3-16-cv-00897)
District Judge:  Honorable Robert D. Mariani
_____

Argued December 9, 2019

Before:  RESTREPO, ROTH and FISHER, *Circuit Judges*.

(Filed: May 19, 2020)

Matthew H. Haverstick, *[ARGUED]*
Eric J. Schreiner
Shohin H. Vance
Kleinbard
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
        *Counsel for Appellants*

Christopher R. Nestor
Overstreet & Nestor
1425 Crooked Hill Road
#62066
Harrisburg, PA 17106
        *Counsel for Appellee Wayne Land and Mineral Group
        LLC*

Mark L. Greenfogel
Kenneth J. Warren  *[ARGUED]*
Warren Environmental Counsel
975 Mill Road
Millridge Manor House Suite A
Bryn Mawr, PA 19010
        *Counsel for Appellee Delaware River Basin
        Commission*

2

Jordan B. Yeager  *[ARGUED]*
Curtin & Heefner
2005 South Easton Road, Suite 100
Doylestown, PA 18901
        *Counsel for Appellees Maya Van Rossum, The
Delaware Riverkeeper and Delaware Riverkeeper Network*

_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

It is well established that a federal court has a duty to assure itself that the persons invoking its power have standing to do so under Article III of the Constitution. That principle applies even to putative intervenors of right under Federal Rule of Civil Procedure 24(a)(2), who must demonstrate constitutional standing for each claim they wish to bring if the claim would result in relief different from that which the plaintiff seeks. *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645 (2017).

In this case, the District Court ruled on the merits of a Rule 24 motion by three Pennsylvania state senators before considering fully whether the Senators need to establish Article III standing for either of their two proposed claims. Because we conclude that on each of those claims the Senators appear to be seeking relief different from that sought by the plaintiff, and that the District Court is best positioned to decide this question in the first instance, we will vacate the District Court's order and remand for consideration of whether the Senators must demonstrate Article III standing.

I

The underlying dispute in this case is not new to our Court. *See Wayne Land & Mineral Grp. LLC v. Del. River Basin Comm'n*, 894 F.3d 509 (3d Cir. 2018) (*Wayne I*). Nevertheless, some account of that dispute is necessary for adequate disposition of the present appeal.

A

In late 1961, concurrent legislation in Congress and the states of Delaware, New Jersey, New York, and Pennsylvania adopted into law the Delaware River Basin Compact.[1] That agreement was designed in part to centralize and coordinate among the states "the planning, conservation, utilization, development, management and control of the water resources of the basin." Delaware River Basin Compact § 1.3(e) (1961), https://www.state.nj.us/drbc/library/documents/compact.pdf.[2] To this end, the Compact created an interstate agency, the Delaware River Basin Commission (DRBC), and delegated to it several powers. Among those powers is the authority to review and approve any "project having a substantial effect on the water resources of the basin." *Id.* § 3.8. The scope of this power in turn depends upon the definition of two terms. First, the Compact defines "project" as

---

[1] Under the Federal Constitution, a state may "enter into any Agreement or Compact with another State" only with "the Consent of Congress." U.S. Const. art. I, § 10, cl. 3. As a result, the Compact is federal law. *See* Pub. L. No. 87-328, 75 Stat. 688 (1961).

[2] The Basin is defined as "the area of drainage into the Delaware River and its tributaries, including Delaware Bay." *Id.* § 1.2(a).

> any work, service or activity which is separately planned, financed, or identified by the commission, or any separate facility undertaken or to be undertaken within a specified area, for the conservation, utilization, control, development or management of water resources which can be established and utilized independently or as an addition to an existing facility, and can be considered as a separate entity for purposes of evaluation.

*Id.* § 1.2(g). Second, it defines "water resources" as "includ[ing] water and related natural resources in, on, under, or above the ground, including related uses of land, which are subject to beneficial use, ownership or control." *Id.* § 1.2(i).

Despite these definitions, the extent of the DRBC's review-and-approval authority remains uncertain, and that uncertainty lies at the heart of the underlying dispute in this case. In 2009, the then-Executive Director of the DRBC, Carol R. Collier, invoked § 3.8 to regulate horizontal drilling and hydraulic fracturing, or fracking, in the Basin. Concerned that these activities "if not properly performed may cause adverse environmental effects, including on water resources," Collier issued a "Determination" giving "notice to natural gas extraction project sponsors that they may not commence any natural gas extraction project located in shale formations within the drainage area of Special Protection Waters without first applying for and obtaining [DRBC] approval." Del. River Basin Comm'n, Determination of the Executive Director Concerning Natural Gas Extraction Activities in Shale Formations Within the Drainage Area of Special Protection Waters 2 (May 19, 2009) (2009 Determination), https://www.nj.gov/drbc/library/documents/EDD5-19-

5

09.pdf.[3] A "project" was in turn said to "encompass[] the drilling pad upon which a well intended for eventual production is located, all appurtenant facilities and activities related thereto and all locations of water withdrawals used or to be used to supply water to the project." *Id.* Collier later extended this regulation to "projects intended solely for exploratory purposes." Del. River Basin Comm'n, Supplemental Determination of the Executive Director Concerning Natural Gas Extraction Activities in Shale Formations Within the Drainage Area of Special Protection Waters 1 (June 14, 2010) (2010 Determination) (emphasis omitted), https://www.nj.gov/drbc/library/documents/SupplementalED D6-14-10.pdf.[4]

B

Wayne Land and Mineral Group, LLC owns approximately 180 acres of land in Wayne County, Pennsylvania. Nestled in the northeastern part of the state, the county shares with New York a border shaped by the serpentine course of the upper Delaware River and its western branch. Wayne purchased the property to access, via fracking, valuable natural-gas reserves within the underground shale-

---

[3] The "Special Protection Waters" cover "the entire 197-mile non-tidal Delaware River from Hancock, N.Y. to Trenton, N.J." *Special Protection Waters (SPW)*, Del. River Basin Commission (Apr. 10, 2019), https://www.state.nj.us/drbc/programs/quality/spw.html.

[4] The parties dispute how to refer to these guidance documents. In particular, the Senators refer to them collectively as the "moratorium" or "*de facto* moratorium" on fracking in the Basin. We will, however, continue to call them the Determinations.

rock formations that have come to characterize this region. However, because some of the land also lies within the Basin, Wayne's intended fracking activities are subject to the DRBC's claimed authority under the 2009 and 2010 Determinations.

In May 2016, Wayne sued the DRBC in federal court, challenging the agency's authority to regulate the company's proposed fracking activities. In particular, Wayne sought a declaration that "the [DRBC] does not have jurisdiction over, or the authority to review and approve, . . . [Wayne's] proposed well pad, appurtenant facilities or the related activities to be carried out" on its property. JA99. Wayne argued that its proposed well pad "does not constitute a 'project' under Section 3.8 of the Compact," and that, as a result, it was not subject to the DRBC's claimed project-review authority. JA97.

Several outside parties immediately sought to intervene in the action under Rule 24. The Delaware Riverkeeper Network and its leader, Maya K. van Rossum (collectively, the Riverkeeper), were permitted to do so in September 2016 on behalf of the DRBC. About a month later, Pennsylvania State Senators Joseph B. Scarnati III, Gene Yaw, and Lisa Baker also sought to intervene, but on the side of Wayne. Acting in their official capacities, the Senators asserted that the "DRBC is nullifying the General Assembly's lawmaking power by effectively countermanding the directives of duly enacted laws that permit" various fracking-related activities. JA107. The Senators sought "to protect the authority and legislative prerogative of the Pennsylvania Senate and the Pennsylvania General Assembly to regulate commercial activities in Pennsylvania." JA108. They did not specify the relief they sought, however, saying only that "they intend to adopt in whole [Wayne's] complaint," and attaching a copy of it to their motion. JA113.

7

Both the DRBC and the Riverkeeper opposed the Senators' motion. Among other arguments, the Riverkeeper contended that the Senators lacked standing to intervene because they could not meet any of the three elements established in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The District Court denied the Senators' motion without discussing the Riverkeeper's standing argument. Rather, it held on the merits that the Senators had failed to establish all the conditions necessary for intervention of right under Rule 24(a), and it likewise declined to permit the Senators to intervene under Rule 24(b).

A few months later, the District Court granted the DRBC's motion to dismiss. It rejected the agency's arguments regarding ripeness, standing, final agency action, and exhaustion, but nevertheless dismissed the action sua sponte, declaring it "apparent that [Wayne's] proposed activities within the Delaware River Basin constitute a 'project' within the meaning of that term as defined in Sections 1.2(g) and 1.2(i) of the Compact." JA296.

Wayne appealed. Our Court upheld the District Court's decision regarding the DRBC's arguments, but concluded that "the District Court erred when it decided that the Commission's project review authority under the terms of the Compact unambiguously includes Wayne's proposed activities." *Wayne I*, 894 F.3d at 533. We remanded for further fact-finding as to the Compact drafters' intent, cautioning that our opinion should not be read as "adopting or endorsing either Wayne's interpretation or the [DRBC]'s, or anyone else's." *Id.*

On remand, the Senators again sought to intervene. This time, they presented a unique proposed complaint, articulating two grounds for relief. In Count I, they requested that the District Court "invalidate the *de facto* moratorium and enjoin

8

its further enforcement," JA424, arguing that it "violates the terms of the Compact because it exceeds the scope of authority ceded to the [DRBC] under the Compact," JA421. Alternatively, in Count II, the Senators requested an order that the DRBC "provide just compensation for the deprivation of the economic value of the property in question." JA424. According to the Senators, even if the Determinations are a valid exercise of the DRBC's authority, they nevertheless constitute "a regulatory taking without just compensation" under the Fifth Amendment. JA422.

The DRBC and the Riverkeeper again opposed the Senators' attempt to intervene. This time, however, neither party contended that the Senators lack standing, resting their arguments chiefly on the merits of the Senators' motion. The District Court agreed, denying the motion because the Senators had not shown a "significantly protectable interest in th[e] litigation." JA41. The Senators timely appealed.

## II[5]

The Supreme Court has repeatedly described the question of Article III standing as a "threshold" issue. *See, e.g.*, *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019); *Gill v. Whitford*, 138 S. Ct. 1916, 1923 (2018); *Horne v. Flores*, 557 U.S. 433, 445 (2009); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). It is an "irreducible constitutional minimum," without which a court would not have jurisdiction to pass on the merits of the action. *Lujan*, 504

---

[5] The District Court's and our jurisdiction is at issue here, and "it is familiar law that a federal court always has jurisdiction to determine its own jurisdiction." *In re Lipitor Antitrust Litig.*, 855 F.3d 126, 142 (3d Cir. 2017) (quoting *United States v. Ruiz*, 536 U.S. 622, 628 (2002)).

9

U.S. at 560. As a result, federal courts "have an obligation to assure [them]selves of litigants' standing under Article III." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 340 (2006) (citation and internal quotation marks omitted). Indeed, as we have put it, "[o]ur continuing obligation to assure that we have jurisdiction requires that we raise [the] issue[] of standing . . . sua sponte." *Seneca Res. Corp. v. Township of Highland*, 863 F.3d 245, 252 (3d Cir. 2017) (citation and internal quotation marks omitted). We must "assess our own appellate jurisdiction in the first instance." *Id.*

These principles apply even when an individual seeks to intervene under Rule 24(a)(2). In this context, as in any other, standing is a "threshold issue." *Town of Chester*, 137 S. Ct. at 1648. "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Id.* at 1650 (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)). As a result, if a putative intervenor of right "seeks additional relief beyond that which the plaintiff requests," then the intervenor "must demonstrate Article III standing." *Id.* at 1651. "Absent such a showing, exercise of its power by a federal court would be gratuitous and thus inconsistent with the Art. III limitation." *Id.* at 1650 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976)). The District Court in the present case therefore had a duty, before passing on the merits of the Senators' motion to intervene, to determine whether the Senators must demonstrate Article III standing—whether, that is, they seek relief "different from that which" Wayne requests. *Id.* at 1651.

To be sure, in its denial of the Senators' second motion to intervene, the District Court did briefly confront this issue, though not as a threshold inquiry but rather as part of its ruling on the merits of the motion. The Senators, it noted, failed to "address the broadened scope of the current litigation which

10

their [Proposed] Complaint presents." JA36 (brackets in original). The District Court distinguished between the two counts of the Senators' complaint. "It may be true," the District Court wrote, "that the relief sought in [Wayne's] Complaint is sufficiently similar to the relief sought in Count I of the [Senators'] [Proposed] Complaint that the Senators need not meet the standing criteria for that claim." JA36 (third brackets in original) (citations omitted). But as to Count II, "it is clear that the Senators seek relief that is broader than" that requested by Wayne. JA37 (alteration and internal quotation marks omitted). As a result, the District Court, citing *Town of Chester*, concluded that the Senators had failed to show "that they are not required to satisfy standing criteria to support their claim for intervention as of right." JA37. Yet, despite this conclusion, the District Court provided no further elaboration on the standing issue.

III

Our review of the record indicates that, on both counts of their proposed complaint, the Senators appear to be seeking relief different from[6] that sought by Wayne. We will discuss each count in turn.

---

[6] We clarify here at the outset that under *Town of Chester*, "different from" does not necessarily mean entirely different from. "For all relief sought, there must be a litigant with standing"; a putative intervenor of right is therefore required to demonstrate Article III standing not only in cases where the relief it seeks is categorically distinct from that sought by the plaintiff, but also in cases where the intervenor "seeks *additional* relief *beyond that* which the plaintiff requests." 137 S. Ct. at 1651 (emphases added).

11

## A

As to the relief requested in Count I, the Senators emphasize the District Court's observation regarding its similarity to the relief sought by Wayne. But they offer no further reasoning as to why this observation is correct, considering it "plain[]" that standing is "not at issue with regard to the first count." Appellants' Reply Br. at 4.

The issue is not as clear as the Senators suggest.[7] Their proposed complaint provides differing formulations of the relief they seek. For example, in their prayer for relief, the Senators "respectfully request that this Court invalidate the *de facto* moratorium and enjoin its further enforcement." JA424; *see also* JA423. Elsewhere, though, they suggest that they want only declaratory relief under Count I. *See, e.g.*, JA415, 422. Perhaps recognizing the problematic nature of their prayer for relief,[8] the Senators emphasize this latter formulation in their

---

[7] Apart from all else, the District Court's statement is hardly definitive. It said only that it "may" be true that the relief sought by Wayne is "sufficiently" similar to the relief sought under Count I of the Senators' proposed complaint. JA36.

[8] There are two problematic aspects in particular. First, there is no indication that Wayne has requested injunctive relief. So if such relief is an essential part of Count I, then the Senators— whose very statement distinguishes between declaratory and injunctive relief—must demonstrate Article III standing as to that claim. *See Steffel v. Thompson*, 415 U.S. 452, 466 (1974) ("Congress plainly intended declaratory relief to act as an alternative to the strong medicine of the injunction."); *Alli v. Decker*, 650 F.3d 1007, 1014 (3d Cir. 2011) ("[D]eclaratory relief will not always be the functional equivalent of injunctive relief."). Second, an invalidation of the 2009 and 2010 Determinations might conflict with our holding in *Wayne I*

reply brief: "As it relates to Count I, the redress or benefit the Senators seek is a declaration that, under the Compact, the [DRBC] lacks authority to institute a moratorium within the Basin." Appellants' Reply Br. at 3 (internal quotation marks omitted). For the purposes of this analysis, we will assume that the Senators seek declaratory relief alone.

There are two aspects of the request worth noting. First, it appears to challenge the DRBC's authority under not simply § 3.8 of the Compact—the invoked basis for the 2009 and 2010 Determinations—but any provision of the Compact. *See also, e.g.*, JA415 ("The Senators seek a declaration [from] this Court that the Delaware River Basin Compact . . . does not confer

concerning final agency action. The DRBC argued there that the suit should be dismissed because the agency had not reached a final decision on whether to block Wayne's proposed activities. After noting that the doctrine of final agency action usually applies only under the Administrative Procedure Act, we observed that "the question Wayne poses is not really one of administrative law at all." 894 F.3d at 525. "Wayne is not asking for a review of an agency's action. Wayne's complaint does not seek to invalidate [the Determinations]." *Id.* Instead, we pointed out, Wayne is seeking a declaratory judgment on a question of law: whether the term "project" under the Compact covers its proposed activities. *Id.* at 525-26. According to the Senators' prayer for relief, however, invalidation of the Determinations is precisely what they seek. Therefore, to the extent the Senators wish to reframe the relief Wayne requests, they are changing the nature of this action—rendering it one of administrative law rather than of contract interpretation. If that is the case, then the Senators need to establish Article III standing because they would in effect be pressing a distinct claim, seeking different relief.

jurisdiction on the Commission to implement or otherwise enforce the moratorium."). Second, the request challenges the DRBC's authority to institute a *moratorium* on fracking activities within the Basin. The Senators therefore seem to want a declaration not simply that the DRBC may not review Wayne's proposed fracking activities, but that it may not review any firm's fracking activities.

With these points in mind, we must now consider more specifically Wayne's requested relief. In its broadest formulation, this relief would be a declaration:

> that the [DRBC] does not have jurisdiction over, or the authority to review and approve, or to require [Wayne] to seek prior approval from the [DRBC] for, or to otherwise preclude the development of, [Wayne's] proposed well pad, appurtenant facilities or the related activities to be carried out on the Property.

JA99. At first glance, this request could encompass more than a challenge to the DRBC's claimed authority in the 2009 and 2010 Determinations, bringing it, in that respect, in line with the Senators' requested relief. Nevertheless, there are two ways in which it seems different from the relief the Senators seek.

First, the language tracks that of the 2009 Determination. In claiming review authority over "any natural gas extraction project," Executive Director Collier added that "[f]or this purpose a project encompasses the drilling pad upon which a well intended for eventual production is located, all appurtenant facilities and activities related thereto and all locations of water withdrawals used or to be used to supply water to the project." 2009 Determination at 2. The suggestion (in a sense confirmed by the subsequent course of the litigation) is that in mirroring Collier's wording, Wayne is

14

specifically concerned with the 2009 and 2010 Determinations, and therefore with the DRBC's project-review authority under § 3.8 of the Compact, rather than with all of the DRBC's authority under the Compact. It is thus possible that, even if Wayne prevailed, the result would nullify only the Determinations' claimed basis of authority, leaving open the possibility that the DRBC might in the future exercise alternative authority to regulate fracking in the Basin. *See Wayne I*, 894 F.3d at 530 n.17 (emphasizing that "[w]e take no position on whether [any other provision of the Compact] provides the [DRBC] an alternative jurisdictional basis to require advance approval of fracking activity").

Second, Wayne's requested relief refers specifically to Wayne, rather than to any fracking firm. At the very least, this raises factual issues regarding the precise nature of Wayne's proposed activities, the aspects of those activities that (should Wayne prevail) fall outside the scope of the DRBC's regulatory authority, and whether a declaration as to those aspects would in effect constitute a declaration that the DRBC lacks the authority to review the proposed fracking activities of any other firm. The Senators, as noted, are not concerned with just Wayne's problems: they appear to be looking to bar the DRBC from interfering with the fracking activities of any firm in the Basin. If so, and if Wayne's requested relief is specific to it, then the Senators must indeed establish Article III standing as to Count I.

B

As the District Court acknowledged, Count II of the Senators' proposed complaint clearly demands different relief. On appeal, the Senators make an interesting argument that in effect Count II resolves into Count I under the canon of constitutional avoidance. "Count II," we are told, "seeks a

15

declaration that the Compact cannot be interpreted as conferring the broad power claimed by the [DRBC] because the exercise of such authority would violate the United States Constitution, rendering the entire contract illegal." Appellants' Reply Br. at 5. Yet this neglects the very point at issue—the nature of the relief sought. In their proposed complaint, the Senators specifically request an order "directing the [DRBC] to afford just compensation for the diminution of the economic value of the property it has appropriated." JA423. Wayne, by contrast, has sought only declaratory relief. The Senators must therefore establish Article III standing as to Count II of their proposed complaint.

IV

Although this conclusion might recommend that we next consider whether the Senators in fact have standing at least as to Count II, we nevertheless think it appropriate to remand the entire case to the District Court. The Senators' arguments regarding that Count imply that the real goal of their intervention lies with Count I. In *Town of Chester*, the Supreme Court vacated and remanded because of an "ambiguous record and the lack of a reasoned conclusion on [the standing] question from" the lower court. 137 S. Ct. at 1652 n.4; *see also Laroe Estates, Inc. v. Town of Chester*, 693 F. App'x 69, 70 (2d Cir. 2017) ("[R]esolving the ambiguity identified by the Supreme Court is likely to require a factual inquiry that this Court lacks the institutional capacity to perform."). The same two grounds apply here. The Senators insist that Count I seeks only a declaration that the DRBC lacks the authority under any provision of the Compact to regulate or bar fracking activities in the Basin. Wayne might also be seeking such relief, but it is at the very least unclear if a ruling for Wayne would apply to the entire Compact rather than just § 3.8, and if it would necessarily apply to the activities of other firms.

We think the District Court is best positioned to resolve these questions, and any others that might appear, in the first instance. Having overseen the litigation from the beginning, it is most familiar with the unique circumstances of the case and how they inform the nature of the relief sought. With the standing issue squarely before it, the District Court should have the opportunity to "offer the first word." *Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710, 717 (2019); *see also Frank v. Gaos*, 139 S. Ct. 1041, 1046 (2019) (per curiam) (vacating and remanding for the lower courts to resolve "the standing question . . . in the first instance"); *Cudjoe ex rel. Cudjoe v. Dep't of Veterans Affairs*, 426 F.3d 241, 250 (3d Cir. 2005) (remanding for the district court "to address the standing issues in the first instance," where standing was briefed by the parties on appeal but not addressed by the district court).

V

For the foregoing reasons, we will vacate the District Court's order and remand for proceedings consistent with this opinion.

17