PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-2014
_____


MARY K. BOLEY; KANDIE SUTTER; PHYLLIS
JOHNSON, Individually and as representatives of a class of
similarly situated persons, on behalf of the Universal Health
Services, Inc. Retirement Savings Plan

v.

UNIVERSAL HEALTH SERVICES, INC.; UNIVERSAL
INC.; THE UHS RETIREMENT PLANS INVESTMENT
COMMITTEE; DOES 1-10,
Whose Names Are Currently Unknown


Universal Health Services, Inc. and Health Universal
Health Services, Inc. Retirement Plans Investment
Committee,
                                                    Appellants

_____


On Appeal from the United States District Court
for the Eastern District of Pennsylvania

D.C. Civil Action No. 2-20-cv-02644
(District Judge: Honorable Mark A. Kearney)
_____

Argued: February 11, 2022

Before: GREENAWAY, JR., SCIRICA and COWEN[1],
*Circuit Judges*.

(Filed: June 1, 2022)

Deborah S. Davidson
Morgan Lewis & Bockius
110 North Wacker Drive
Suite 2800
Chicago, IL  60606

Michael E. Kenneally [ARGUED]
Morgan Lewis & Bockius
1111 Pennsylvania Avenue, N.W.
Suite 800 North
Washington, DC  20004

Matthew D. Klayman
Brian T. Ortelere
Morgan Lewis & Bockius

---

[1] The Honorable Robert E. Cowen assumed inactive status on April 1, 2022 after the argument and conference in this case, but before the filing of the opinion. This opinion is filed by a quorum of the panel pursuant to 28 U.S.C. § 46(d) and Third Circuit I.O.P. Chapter 12.

1701 Market Street
Philadelphia, PA 19103

Sean K. McMahan
Morgan Lewis & Bockius
1717 Main Street
Suite 3200
Dallas, TX 75201

      *Counsel for Appellants*

John M. Masslon, II
Washington Legal Foundation
2009 Massachusetts Avenue, N.W.
Washington, DC 20036

      *Counsel for Amicus Appellant*

Alec Berin
James C. Shah
Miller Shah
1845 Walnut Street
Suite 806
Philadelphia, PA 19103

James E. Miller [ARGUED]
Miller Shah
65 Main Street
Chester, CT 06412

Mark K. Gyandoh
Gabrielle P. Kelerchian
Capozzi Adler

312 Old Lancaster Road
Merion Station, PA  19066

Donald R. Reavey
Capozzi Adler
2933 North Front Street
Harrisburg, PA  17110

     *Counsel for Appellees*

———————————

OPINION OF THE COURT

———————————

**SCIRICA**, *Circuit Judge*

     In this interlocutory appeal, fiduciaries of a retirement plan appeal the District Court's certification of a class of participants who allege the fiduciaries breached their duty under the Employee Retirement Income Security Act of 1974 ("ERISA").  At issue in this case is whether the typicality requirement of Federal Rule of Civil Procedure 23(a) is satisfied when the class representatives did not invest in each of a defined contribution retirement plan's available investment options.

     We will affirm.  Because the class representatives allege actions or a course of conduct by ERISA fiduciaries that affected multiple funds in the same way, their claims are typical of those of the class.

## I. FACTS AND PROCEDURAL HISTORY

Universal Health Services, Inc. sponsors the Universal Health Services, Inc., Retirement Savings Plan (the "Plan"), a defined contribution retirement plan,[2] in which qualified employees can participate and invest a portion of their paycheck in selected investment options. The Plan's investment options and administrative arrangements are chosen and ratified by the UHS Retirement Plans Investment Committee (the "Committee"). The Committee is appointed and overseen by Universal. Both Universal and the Committee

---

[2] ERISA covers two types of retirement plans: defined benefit plans and defined contribution plans. A defined benefit plan "generally promises the participant a fixed level of retirement income, which is typically based on the employee's years of service and compensation." *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 250 n.1 (2008); *see* 29 U.S.C. § 1002(35). The promised payments are made to participants from the plan's "general pool of assets." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999). A defined contribution plan, in contrast, "promises the participant the value of an individual account at retirement, which is largely a function of the amounts contributed to that account and the investment performance of those contributions." *LaRue*, 552 U.S. at 250 n.1. In a defined contribution plan, "all of the plan's money is allocable to plan participants," and the "vested benefits are the contents of [each participant's] account: contributions (from both the participant and employer) plus investment gains minus investment losses and any allocable expenses." *Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 297, 301 (3d Cir. 2007).

serve as the Plan's fiduciaries and administrators (collectively, "Universal").

Since 2014, the Plan's available investment options consisted of thirty-seven funds, including mutual funds and a collective investment trust. As with most investment funds, the Plan funds charge participants annual management fees. The Plan also charges participants an annual recordkeeping and administrative fee. Each year, every investor in the Plan would pay the annual recordkeeping and administrative fee, plus the additional fees associated with whichever investment fund or funds in which he or she chose to invest.

Among the investment options is the Fidelity Freedom Fund suite, consisting of thirteen target date funds. Target date funds are managed funds that shift in investment strategy as a target retirement year approaches. The Fidelity Freedom Fund suite was designated as the Plan's Qualified Default Investment Alternative, meaning Universal would automatically invest Plan participants' money in one of the thirteen Fidelity Freedom Funds if no other investment selection was made.

The class representatives are three current and former participants in the Plan (the "Named Plaintiffs"). Between them, the Named Plaintiffs invested in seven of the Plan's thirty-seven investment options. They were also charged the Plan's annual fee for recordkeeping and administrative services.

The Named Plaintiffs, on behalf of themselves and all other Plan participants, sued Universal under 29 U.S.C.

6

§ 1132(a)(2)[3] and 29 U.S.C. § 1109.[4]  The Named Plaintiffs allege Universal breached its fiduciary duty by including the Fidelity Freedom Fund suite in the plan, charging excessive recordkeeping and administrative fees, and employing a flawed process for selecting and monitoring the Plan's investment options, resulting in the selection of expensive investment options instead of readily-available lower-cost alternatives.  The Named Plaintiffs also allege certain Universal defendants breached their fiduciary duty by failing to monitor the Committee appointed to manage the Plan.

Universal moved for partial dismissal of the Named Plaintiffs' claims, contending the Named Plaintiffs lacked constitutional standing to pursue claims relating to funds in

---

[3] An ERISA civil action may be brought "by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title."  29 U.S.C. § 1132(a)(2).

[4] The relevant provisions under ERISA regarding liability for breach of fiduciary duty are set out in 29 U.S.C. § 1109(a):

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

which they did not personally invest. The District Court denied Universal's motion, holding the Named Plaintiffs had standing to pursue all their claims because they alleged concrete injuries resulting from Universal's Plan-wide misconduct. *Boley v. Universal Health Servs., Inc.*, 498 F. Supp. 3d 715, 719 (E.D. Pa. 2020). Accordingly, the Named Plaintiffs were permitted to bring their claims as alleged, because "claims relating to allegedly imprudent decision-making processes injure all plan participants." *Id.* at 723.

The Named Plaintiffs then moved to certify a class under Rule 23(b)(1), comprising all current and former Plan participants (the "Class"). In opposition, Universal argued that because the Named Plaintiffs did not invest in thirty of the Plan's funds, they lack standing to bring claims relating to these funds, making these claims atypical to those of the Class. Universal also argued the Named Plaintiffs' claims were atypical because the Named Plaintiffs lacked incentive to demonstrate reasonable alternatives to the thirty funds in which they did not invest.[5]

The District Court rejected Universal's argument and certified a class composed of all participants in the Plan from

---

[5] Universal also argued that Named Plaintiffs' claims were atypical in the Class because of individualized defenses under ERISA § 404(c) and potentially differing limitations periods. But the District Court found there were no individualized defenses and no differing limitations periods. Defendants opted not to appeal that aspect of the District Court's decision.

June 5, 2014, to the present.[6] *Boley v. Universal Health Servs., Inc.*, 337 F.R.D. 626 (E.D. Pa. 2021). It emphasized "[t]he focus of the Participants' claims is on [Universal's] conduct as to all Plan participants rather than about the individual investment choices made by Participants and putative Class members." *Id.* at 636. Referencing its earlier decision denying Universal's partial motion to dismiss for lack of standing, the District Court reiterated its view that the Named Plaintiffs challenged Universal's Plan-wide conduct. For this reason, the District Court held the Named Plaintiffs' claims were typical

---

[6] The District Court certified this class under Rule 23(b)(1). Fed. R. Civ. P. 23(b)(1) provides that a class action may be maintained if:

> prosecuting separate actions by or against individual class members would create a risk of (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

The District Court held certification was proper under both Rule 23(b)(1)(A) and Rule 23(b)(1)(B). 337 F.R.D. at 638–39. Universal does not challenge that certification was proper under either Rule 23(b)(1)(A) or (b)(1)(B). It only challenges that the general requirement of typicality under Rule 23(a) was satisfied.

of claims regarding the funds in which the Named Plaintiffs did not invest. Universal petitioned for leave to appeal the class certification decision on an interlocutory basis under Fed. R. Civ. P. 23(f). We granted Universal's petition for an interlocutory appeal.

## II. JURISDICTION

The District Court had statutory federal-question jurisdiction over this ERISA lawsuit under 28 U.S.C. § 1331. We have jurisdiction over this interlocutory appeal of a class certification decision under 28 U.S.C. § 1292(e). *See also* Fed. R. Civ. P. 23(f).

Universal does not challenge our statutory jurisdiction over this suit but, as part of its typicality argument, challenges the Named Plaintiffs' standing under Article III. Specifically, for purposes of this appeal, Universal characterizes the Named Plaintiffs' lack of standing as destroying typicality. But a lack of standing would present a more fundamental problem for the Named Plaintiffs because a lack of standing necessitates dismissal of claims, whether brought in a class action or in any other kind of suit. Because "our continuing obligation to assure that we have jurisdiction requires that we raise the issue of standing sua sponte," *Wayne Land & Mineral Grp. v. Del. River Basin Comm'n*, 959 F.3d 569, 574 (3d Cir. 2020) (cleaned up) (quoting *Seneca Res. Corp. v. Twp. of Highland*,

863 F.3d 245, 252 (3d Cir. 2017)), we will address the Named Plaintiffs' standing directly, as a question of jurisdiction.[7]

To establish standing, a plaintiff must show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "[S]tanding is not dispensed in gross," and "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Ests., Inc.*, 137 S. Ct. 1645, 1650 (2017) (citation omitted). Review of a party's standing to sue is de novo. *Free Speech Coal., Inc. v. Att'y Gen.*, 974 F.3d 408, 419 (3d Cir. 2020).

To determine whether the Named Plaintiffs have standing, we first look to the Complaint. Count I claims a breach of fiduciary duty and Count II claims a failure to monitor fiduciaries. For Count I, the Named Plaintiffs allege three specific breaches of fiduciary duty: first, Universal's alleged imprudence in offering the excessively expensive Fidelity Freedom Fund suite to Plan participants; second, Universal's alleged failure to monitor and reduce the

---

[7] Because we address standing sua sponte, it is immaterial that we only certified Universal's petition to appeal the District Court's order pertaining to class certification, not the earlier order pertaining to standing. Moreover, we are satisfied the standing arguments were fully briefed by the parties, albeit in the context of typicality and class certification, rather than jurisdiction.

11

excessively high recordkeeping and administrative fees for the Plan; and third, Universal's alleged lack of a "prudent investment evaluation process," App. 59, ¶47, which resulted in the Plan offering a menu of excessively expensive investments.

Taking these claims out of order, Universal concedes the Named Plaintiffs have standing for the second claim challenging the recordkeeping and administrative costs. We agree. The challenged conduct—charging each Plan participant a flat annual recordkeeping and administrative fee—affected all Plan participants in the same way. This allegedly excessive annual fee would represent a concrete and personal injury to a plaintiff regardless of the funds in which he or she invested. It is immaterial to our standing analysis that each plaintiff's actual recovery would be personal to his or her individual account, or that, due to the effects of compounding interest, a flat annual fee represents a higher ultimate cost for a plaintiff further from retirement than one close to retirement.

For the alleged imprudent selection of the Fidelity Freedom Fund suite, the Named Plaintiffs similarly have a concrete injury flowing from the challenged conduct. The Named Plaintiffs each invested in at least one of the Fidelity Freedom Funds. Importantly, the Named Plaintiffs' allegations in the Complaint are that all of the funds in the suite were imprudent for the same reasons—they were all excessively expensive funds, because they invested in high fee actively managed funds rather than low-cost index funds. If the Named Plaintiffs' allegations are true, each class representative suffered a concrete injury traceable to Universal's imprudent choice to include the Fidelity Freedom Fund suite in the Plan, rather than a suite consisting of target

date funds that invested in less expensive index funds. The Named Plaintiffs have standing to bring this claim.

The standing analysis for the final claim under Count I is also similar. For this claim, the Named Plaintiffs allege Universal "lack[ed] a prudent investment evaluation process" when choosing and evaluating investments offered to Plan participants. App. 59, ¶ 47. The Named Plaintiffs contend this failure resulted in an excessively expensive investment menu. Universal allegedly failed to "consider ways in which to lessen the fee burden" on Plan participants, App. 57–58, ¶ 45, leading to the Plan paying total investment management fees nearly double those paid by comparable Plans. Because each class representative invested in at least one fund with allegedly excessive fees, the Named Plaintiffs adequately alleged they suffered injury from Universal's imprudent investment evaluation process, and, accordingly, have standing to bring this claim.

For Count II, the Named Plaintiffs allege a failure to monitor the performance of the Committee and its appointed members, resulting in "imprudent, excessively costly, and poorly performing" investments. App. 68, ¶ 80(c). This Count incorporates the factual allegations supporting the three claims in Count I, and, accordingly, relates to Universal's conduct regarding the administration of the Plan as a whole, not specific funds. For this reason, Count II, like the claims in Count I, alleges conduct by Universal that led to concrete injuries to all of the Named Plaintiffs. Accordingly, the Named Plaintiffs have standing to bring this claim as well.

Since the Named Plaintiffs allege concrete injuries traceable to the challenged decisions and courses of conduct of

13

the defendants, they have met the requirements for standing. Article III does not prevent the Named Plaintiffs from representing parties who invested in funds that were allegedly imprudent due to the same decisions or courses of conduct. In *Sweda v. University of Pennsylvania* we held that participants in a defined contribution ERISA plan have standing to bring claims alleging the fiduciary's "process of selecting and managing options must have been flawed" even though the class representatives did not invest in every fund. 923 F.3d 320, 331 (3d Cir. 2019). We noted in *Sweda* that the class representatives alleged they had invested in some of the underperforming funds, and "[t]his allegation links the named plaintiffs with the underperforming investment options and is sufficient to show individual injuries." *Id.* at 334 n.10; *see also Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 593 (8th Cir. 2009) (noting that as long as the named plaintiffs have alleged individualized injuries with respect to all of their claims, they "may proceed under § 1132(a)(2) on behalf of the plan or other participants" even if relief "sweeps beyond [their] own injur[ies]").

Universal asks us to reach the opposite conclusion, contending the Named Plaintiffs' allegations are really thirty-seven separate claims challenging thirty-seven separate investment options included in the Plan. Universal characterizes the Named Plaintiffs' claims as mere "artful pleading" and the District Court's holding that the Named Plaintiffs had standing as "exalting form over substance." Appellants' Br. 40. But the Named Plaintiffs do not allege thirty-seven individual breaches of fiduciary duty, but rather several broader failures by Universal affecting multiple funds in the same way. The District Court's conclusion that the Named Plaintiffs "do not pursue such piecemeal claims," 498

14

F. Supp. 3d at 724, addressed the substance of the Named Plaintiffs' allegations. The decision to offer the suite of Fidelity Freedom Funds was, in effect, one decision that led to thirteen allegedly imprudent funds being included in the Plan; the alleged failure to continuously evaluate management fees affected all funds in the Plan in the same way; and the alleged failure to monitor appointees resulted in high fees across the Plan menu. To establish standing, class representatives need only show a constitutionally adequate injury flowing from those decisions or failures. The Named Plaintiffs allege such an injury for each claim.

Universal suggests this straightforward standing inquiry should be adjusted in light of the Supreme Court's decision in *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615 (2020). True, *Thole* held that, in the absence of a personal loss to a plaintiff's account, an abstract breach of fiduciary duty or a diminishment in a plan's assets is insufficient to confer standing. *See id.* at 1619–20. But the Named Plaintiffs here have alleged the kind of concrete, personalized injuries traceable to the challenged conduct by defendants that *Thole* requires.

Since the Named Plaintiffs each had a concrete and personalized stake in each claim alleged in the complaint, they may proceed under Article III. As the District Court properly recognized, Universal's concerns regarding the representation of absent class members might implicate class certification or damages but are distinct from the requirements of Article III.

## III. CLASS CERTIFICATION

We review a district court's certification of a class for abuse of discretion. *Newton v. Merrill Lynch, Pierce, Fenner*

15

*& Smith, Inc.*, 259 F.3d 154, 165 (3d Cir. 2001).  A district court abuses its discretion if its decision granting or denying class certification "rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact."  *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 312 (3d Cir. 2008) (quoting *Newton*, 259 F.3d at 165).

In this appeal, Universal contends class certification was improper because the class failed to satisfy the Rule 23(a)(3) requirement that the class representative's claims be "typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). The requirement of typicality is imposed to prevent certification when "the legal theories of the named plaintiffs potentially conflict with those of the [class] absentees." *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 631 (3d Cir. 1996); *see also Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006) (noting the Supreme Court's statement that typicality and adequacy of representation "'tend to merge' because both look to potential conflicts" (alteration omitted) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997))).  To avoid conflict, typicality seeks to ensure "the interests of the class and the class representatives are aligned 'so that the latter will work to benefit the entire class through the pursuit of their own goals.'" *Newton*, 259 F.3d at 182–83 (quoting *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 141 (3d Cir. 1998)).  In evaluating typicality, we focus on whether the class representatives' legal theory and claim, or the individual circumstances on which those theories and claims are based, are different from those of the class.  *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597–98 (3d Cir. 2009).

Here, the Named Plaintiffs allege Universal breached its fiduciary duty under ERISA by failing to properly manage

these investment options. But because the Named Plaintiffs did not invest in all thirty-seven of the challenged funds, Universal contends Plaintiffs' claims are not typical of the class. According to Universal, in the context of a defined contribution plan under ERISA, named class representatives' claims are not typical of the class unless the named representatives invested in each of the challenged funds, because, otherwise, the representatives would lack an incentive to litigate on behalf of the class.

Universal points out that to recover under ERISA, a plaintiff must show both an inadequate fiduciary process and the objective imprudence of offering each challenged fund. *See Renfro v. Unisys Corp.*, 671 F.3d 314, 322 (3d Cir. 2011). Because the Named Plaintiffs did not invest in all the Plan's funds, Universal contends the Named Plaintiffs have no incentive to focus their litigation efforts on the objective imprudence of offering the funds in which they did not invest. After all, any recovery stemming from those funds will not be allocated to the Named Plaintiffs' accounts. *See Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 296 n.6 (3d Cir. 2007) (explaining that any recovery under ERISA goes solely to the participants who invested in the imprudent fund). This lack of incentive, Universal insists, precludes a finding that the Named Plaintiffs' claims are typical of those of the class.

We do not find Universal's incentive argument persuasive. The Named Plaintiffs have alleged that Universal employed a flawed fund selection process resulting in a menu of excessively expensive funds. They have also alleged Universal failed to monitor expense ratios and consider possible ways to lessen fees charged to participants. These claims are the same for participants across all the Plan's thirty-

17

seven funds. Each participant's potential recovery, regardless of the fund in which he or she invested, is under the same legal theory—Universal's breach of its fiduciary duty under ERISA in managing the Plan's investment options. Likewise, each participant who was charged excessive fees when investing in any of the Plan's funds can trace his or her injury to the same practice—Universal's alleged failure to properly consider expense ratios when selecting and updating the Plan's investment options.

The same is true for the Named Plaintiffs' allegations that Universal imprudently offered a suite of Fidelity Freedom target date funds with high expense ratios and aggressive equity allocation as the Plan's default investment option. Although the Named Plaintiffs have only invested in three of the suite's thirteen target date funds, Universal's decision to add and retain the Fidelity Freedom suite is the cause of injury for each participant across all thirteen funds. Accordingly, the Named Plaintiffs' claims relating to the funds in which they invested are typical of the claims relating to the funds in which they did not.

This is not to say there are no factual differences between any of the individual thirty-seven funds. Universal's alleged breach may have resulted in some funds charging participants significantly higher fees than others. But these differences relate to degree of injury and level of recovery. So long as the alleged cause of the injury remains the same across all funds, "even relatively pronounced factual differences will generally not preclude a finding of typicality." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 311 (3d Cir. 2016) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994)). Indeed, "[o]ur jurisprudence 'assures that

18

a claim framed as a violative practice can support a class action embracing a variety of injuries so long as those injuries can all be linked to the practice.'" *Newton*, 259 F.3d at 184 (quoting *Baby Neal*, 43 F.3d 48, 63 (3d Cir. 1998)).

Typicality does not require the class representatives' claims be coterminous with those of the class. *See Newton*, 259 F.3d at 185 ("The inability of a class representative to prove every other class members' [sic] claim does not necessarily result in failure of the typicality requirement."). We have held that typicality may be satisfied even if the class representative must introduce additional evidence to support the claims of absent class members. *See Baby Neal*, 43 F.3d at 58 (holding that a class representative suffering one specific injury from the practice can represent a class suffering other injuries so long as all the injuries are shown to result from the practice). Here, the Named Plaintiffs' interests are sufficiently aligned with those of the class because the common allegation for each class member—Universal's alleged imprudence in managing the Plan's funds—is "comparably central to the claims of the named plaintiffs as to the claims of the absentees." *Baby Neal*, 43 F.3d at 57; *see also Newton*, 259 F.3d at 185 (holding that typicality was satisfied because the claims of each class member rested on a securities violation resulting from a uniform course of conduct even though each class member may be required to offer individual proof of damages). For these reasons, typicality is satisfied even though additional fund-specific proof of objective imprudence may be required to support the claims of some class members.

The cases Universal cites do not contradict this typicality inquiry. Universal points to *Schering Plough*, our most recent evaluation of typicality in the context of an ERISA

19

challenge to a defined contribution plan, in which we explained that plaintiffs who lack a "monetary stake in the outcome" do not have interests sufficiently aligned with those of the class. 589 F.3d at 600. The obvious difference between this case and *Schering Plough* is that the Named Plaintiffs here have a monetary stake in the outcome of the case. Unlike the class representative in *Schering Plough* who was potentially subject to a unique defense that precluded her from recovering damages, *see* 589 F.3d at 600, the Named Plaintiffs here are not subject to any unique defenses. The Named Plaintiffs invested in seven of the Plan's funds and, like other class members, have a monetary stake in proving Universal's alleged imprudence.

Universal also relies on *Spano v. Boeing Co.*, 633 F.3d 574 (7th Cir. 2011), another ERISA challenge, in which the Seventh Circuit, purporting to draw support from *Schering Plough*, held typicality was lacking because the possibility that only some of the funds were imprudent created a potential lack of "congruence" between the claims of the class representative and those of absent class members who invested in other funds. *Id.* at 586. Specifically, Universal relies on *Spano*'s per se rule that a "a class representative in a defined-contribution case would at a minimum need to have invested in the same funds as the class members." *Id.*

We find Universal's reliance on *Spano* misplaced because that decision was guided by concerns of potential conflicts between the class representative and the class that are not present here. As described by the Seventh Circuit in *Abbott v. Lockheed Martin Corp.*, the class in *Spano* covered all past and future participants in the defined contribution plan even though the allegations only concerned four specific funds. 725

20

F.3d 803, 813 (7th Cir. 2013). Moreover, the claims relating to those four funds involved "somewhat vague" allegations objecting to the inclusion of the funds and also alleging misrepresentation and excessive risk. *Id.* It was this "combination of exceedingly broad class definitions and murky claims" that made it difficult for the Court in *Spano* to assess whether "intra-class conflict of the sort that defeats both the typicality and adequacy-of-representation requirements of Rule 23(a) was all but inevitable." *Id.* (characterizing *Spano* as a "warning[] that plaintiffs and courts must take care to avoid certifying classes in which a significant portion of the class may have interests adverse to that of the class representative").

Unlike *Spano*, there are no present concerns of intra-class conflict in this case. In the context of ERISA, as in other contexts, the potential for intra-class conflict depends on the type of claim and the contours of the class. *See Abbott*, 725 F.3d at 813 (noting that class treatment in an ERISA case "depends on the claims for which certification is sought"). As stated, the Named Plaintiffs here allege Universal offered an unnecessarily high-cost suite of actively managed target date funds and lacked a prudent investment evaluation process resulting in needlessly high expense ratios across the Plan. The nature of these claims makes intra-class conflicts unlikely—it is difficult to imagine class members who have benefited from, or are content to pay, pointless fees. *Cf. Abbott*, 725 F.3d at 814 (explaining that it was "unlikely that the sorts of conflicts that concerned us in *Spano* will arise" because no investor would have benefited from a fund alleged to have been "*so low-risk that its growth was insufficient for a retirement asset*"). We are satisfied that the Named Plaintiffs' interests are sufficiently aligned with those of the class, and any concern

for conflicts is speculative. This is sufficient to pass the "low threshold" that is typicality. *Newton*, 259 F.3d at 183.

Certainly, there may be some situations where typicality for an ERISA class would not be satisfied unless the class representative invested in each of the challenged funds. But that is not the case here. And because we think the typicality inquiry is best served done on a case-by-case basis, we decline to adopt a per se rule as to whether a class representative must have invested in each of the challenged funds.

We recognize that allowing class representatives to bring claims relating to funds in which they did not invest may result in some inefficiency at the damages stage. But these concerns do not bar certification of this (b)(1) class. Rather, they more closely resemble concerns that might relate to the predominance and superiority requirements for (b)(3) classes than they do the typicality requirement of Rule 23(a).[8] *See*

---

[8] A baseline concern for efficiency is also incorporated into the Rule 23(a) requirements and is accordingly present when certifying mandatory classes under (b)(1) or (b)(2). *See*, *e.g.*, *Newton*, 259 F.3d at 182 ("The significance of commonality is self-evident: it provides the necessary glue among class members to make adjudicating the case as a class worthwhile."); *Baby Neal*, 43 F.3d at 64 ( "[I]t is true that commonality, typicality, and the Rule 23(b)(2) general applicability requirements all manifest a concern about judicial efficiency and manageability . . . ."). But the specific, heightened efficiency concerns of predominance and superiority are only applicable to (b)(3) classes where the justification for class treatment is weaker because individual litigation may be a meaningful alternative to class litigation.

22

*Newton*, 259 F.3d at 184 ("[W]hether the class representatives' claims prove the claims of the entire class highlights important issues of individual reliance and damages that are more properly considered and relevant under the predominance and superiority analysis.").

Indeed, we have held that ERISA "breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class." *Schering Plough*, 589 F.3d at 604. Consistent with the basic principles underlying Rule 23(b)(1), certification of an ERISA class as a (b)(1) class is not dependent on the degree of individual proof that will be required for individual plaintiffs to recover, but rather on the recognition that deciding one plaintiff's claim might mean other plaintiffs might be unable to bring their own claims separately. *Id.* (holding "it is simply not relevant to the Rule 23(b)(1)(B) inquiry" that plaintiffs' claims "present individual issues"). Accordingly, Universal's concerns about the individualized proof that will be required for plaintiffs to recover are not a reason here to prevent certification of a (b)(1) ERISA class that meets the requirements of Rule 23(a).

## CONCLUSION

For these reasons, we will affirm the judgment of the District Court.

---

*See Amchem*, 521 U.S. at 615 (noting that the predominance and superiority requirements for (b)(3) classes were drafted to be "[s]ensitive to the competing tugs of individual autonomy for those who might prefer to go it alone or in a smaller unit, on the one hand, and systemic efficiency on the other").