**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-3449
_____

SHERRY LEWIS; DAVID V. LEWIS,
*individually and on behalf of all others similarly situated*

v.

GOVERNMENT EMPLOYEES INSURANCE COMPANY,
Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 1-18-cv-05111)
District Judge: Honorable Robert B. Kugler
_____

Argued on December 12, 2023

Before: BIBAS, PORTER, and FREEMAN, *Circuit Judges*

(Opinion filed: April 2, 2024)
_____

Alexander Fuchs
Kymberly Kochis   [**ARGUED**]
Eversheds Sutherland
1114 Avenue of the Americas
The Grace Building, 40th Floor
New York, NY 10036

*Counsel for Appellant*

Samir Deger-Sen   [**ARGUED**]
Latham & Watkins
1271 Avenue of the Americas
New York, NY 10020

Cherish A. Drain
Raymond Gans
Gregory G. Garre
Marguerite M. Sullivan
Latham & Watkins
555 11th Street NW
Suite 1000
Washington, DC 20004

*Counsel for Amicus CCC Intelligent Solutions Inc.*

John M. DeStefano, III   [**ARGUED**]
Hagens Berman Sobol Shapiro
11 W Jefferson Street
Suite 1000
Phoenix, AZ 85003

*Counsel for Appellees*

---

**OPINION OF THE COURT**

---

FREEMAN, *Circuit Judge*.

Sherry and David Lewis sued their auto insurer, GEICO, for breaching their insurance contract when their car was totaled. They claim that GEICO undercompensated them in two ways: (1) by applying a "condition adjustment" that artificially reduced its valuation of their car; and (2) by failing to reimburse them for taxes and fees necessary to replace the car. For each instance of underpayment, they sought to certify a class of similarly underpaid insureds.

The District Court certified both classes under Federal Rule of Civil Procedure 23. We will affirm the order certifying the class for the taxes-and-fees claim. But the Lewises (the only named plaintiffs) failed to show that GEICO caused them concrete harm when it applied the condition adjustment. They therefore lack standing to bring the condition-adjustment claim, so we will vacate the District Court's order in part and remand with instructions to dismiss that claim.

**I**

**A**

When an insured's car is totaled, GEICO agrees to pay the Actual Cash Value ("ACV") of the totaled car—effectively its fair market value before the accident, plus certain

replacement costs.[1] But determining a car's ACV is challenging. It involves valuing the insured's specific car in its pre-accident condition, which no longer exists. And many factors influence a car's value, including its trim level, options, after-market alterations, and condition.

Because of these challenges, GEICO uses a multi-step process to determine ACV. First, an adjuster inspects the totaled car and assesses its condition. GEICO then sends the assessment results to a vendor, CCC Intelligent Solutions Inc. ("CCC"), which maintains data on cars for sale across the country. From this data, CCC identifies a set of comparable cars and uses that set to extrapolate a value for the totaled car.

During that extrapolation process, CCC makes two adjustments to account for differences between the totaled car and the set of comparable cars. First, CCC assumes that the average privately owned car is in worse condition than the

---

[1] GEICO's New Jersey insurance policy says that "[t]he limit of our liability for loss . . . [i]s the actual cash value of the property at the time of loss," and that the "[a]ctual cash value of property will be determined at the time of the loss and will include an adjustment for depreciation and/or betterment and for the physical condition of the property." App. 151 (emphases omitted). The policy defines ACV as "the replacement cost of the auto . . . less depreciation and/or betterment." App. 149 (emphases omitted). And it defines "depreciation" as "a decrease or loss in value to the auto . . . because of use, disuse, physical wear and tear, age, outdatedness, or other causes" and "betterment" as "improvement of the auto . . . to a value greater than its pre-loss condition." *Id.*

4

average car on a dealership lot. So CCC applies a downward adjustment—known as a "condition adjustment"—to the value of the comparable cars, which in turn reduces the extrapolated value of the totaled car. Second, CCC adjusts the value of the totaled car upward if any of its components are in above-average condition according to the GEICO adjuster's post-accident assessment.

CCC compiles this information into a Market Valuation Report ("MVR"), which it provides to GEICO. GEICO then uses the MVR's valuation as a starting point for settlement negotiations with the insured. In some circumstances, GEICO's adjusters also look at other sources and review any information the insured provides before making a settlement offer. And its adjusters may settle claims for more than the MVR's valuation.

In recent years, GEICO has compensated insureds for the taxes and fees they must pay to replace their totaled car. But before 2020, it took a different approach. If an insured owned her car, GEICO would pay sales taxes based on the value of the car when it was totaled. But if an insured leased her car, it would only pay a portion of the taxes. And it declined to pay title or license plate transfer fees to both owners and lessees.

B

Named plaintiffs Sherry and David Lewis are a married couple who insured their leased Volkswagen Jetta through GEICO. Their daughter, a covered driver under their insurance policy, crashed their car in January 2018.

After the accident, GEICO followed its standard process to calculate the Lewises' payout. It determined that the car was totaled.[2] It obtained an MVR, which identified a set of comparable vehicles valued at $17,325, $18,879, and $17,770. The MVR applied a condition adjustment that reduced the value of each of the comparable vehicles—and, by extension, the extrapolated value of the Lewises' car—by $1,006.[3] Next, the MVR increased the extrapolated value by $886 because some components of the Lewises' car were in above-average condition. This second adjustment partially offset the condition adjustment, resulting in a final valuation of $17,058.

Working from that valuation, GEICO made an initial settlement offer of $17,058.[4] On January 18, 2018, the Lewises emailed their GEICO agent to object to the offer. They attached information about several comparable cars with an average value of $21,870 and asserted that their car was worth $19,096. They also engaged in negotiations with GEICO over the phone. On February 13, GEICO sent a revised settlement offer of $18,258. The difference between the revised offer and the valuation in the MVR reflects a $1,200

---

[2] A car is totaled if the cost of repairs exceeds a certain percentage of the car's value.

[3] The MVR also applied a mileage adjustment to the comparable vehicles. The Lewises do not challenge that adjustment.

[4] When discussing GEICO's settlement offers, we refer to the amount before subtracting the Lewises' $1,000 deductible, because that figure better reflects GEICO's assessment of the car's ACV.

"adjustment to settle." App. 896. That amount, minus the Lewises' $1,000 deductible, was what GEICO ultimately paid to the Lewises' auto lender, Volkswagen Credit. GEICO did not compensate them for any portion of the taxes and fees.

C

The Lewises sued GEICO for breach of contract.[5] Their claim asserted two distinct theories: (1) that GEICO mechanically applied CCC's condition adjustment to artificially lower its valuation of their car,[6] and (2) that GEICO failed to compensate them for taxes and fees as required by their contract and New Jersey law.

The Lewises sought certification of two classes of GEICO insureds in New Jersey: (1) those who received a settlement offer on their totaled car that did not include taxes and fees ("the taxes-and-fees class"); and (2) those who received a settlement offer on their totaled car that was "based in whole or in part on the price of comparable vehicles reduced

---

[5] The Lewises brought other claims in their complaint, but the District Court dismissed all but the breach of contract claim, and the Lewises did not appeal the dismissal.

[6] This theory is based primarily on a New Jersey insurance regulation, N.J. Admin. Code § 11:3-10.4(a). The Lewises argue that the condition adjustments violate this provision because they are arbitrary and insufficiently itemized. And they argue that their insurance policy incorporates this provision, so a violation of the provision is a violation of their policy.

by a condition adjustment" ("the condition-adjustment class").[7] App. 120–21, 616 (internal quotation marks omitted).

The District Court certified both classes, holding that each met the threshold requirements of Federal Rule of Civil Procedure 23(a) and the predominance and superiority requirements of Rule 23(b)(3). It then denied GEICO's motion for reconsideration. GEICO timely sought and obtained leave to file this interlocutory appeal.

## II

The District Court had jurisdiction under 28 U.S.C. § 1332(d). We have jurisdiction under 28 U.S.C. § 1292(e) and Federal Rule of Civil Procedure 23(f), which provides that "[a] court of appeals may permit an appeal from an order granting or denying class-action certification."

We "review a class certification order for abuse of discretion, which occurs if the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 312 (3d Cir. 2008) (internal quotation marks omitted). "We exercise plenary review over a threshold question of law, such as that presented by an Article III standing challenge." *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 358 (3d Cir. 2015).

---

[7] The parties agreed at oral argument that the condition-adjustment class and the taxes-and-fees class are two classes. Oral Arg. Tr. at 3:15-23, 4:22-6:6, 25:7-20.

8

## III

Article III of the Constitution empowers federal courts to hear "[c]ases" and "[c]ontroversies." U.S. Const. art. III, § 2. "For there to be a case or controversy under Article III, the plaintiff must have a personal stake in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (internal quotation marks omitted). The standing requirement ensures that "federal courts exercise their proper function in a limited and separated government"—resolving "real controvers[ies] with real impact on real persons." *Id.* at 423–24 (internal quotation marks omitted).

To satisfy the standing requirement, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "To show an injury in fact, the first and foremost of standing's three elements, a plaintiff must show an invasion of a legally protected interest that is both concrete and particularized, and actual or imminent, not conjectural or hypothetical." *Yaw v. Del. River Basin Comm'n*, 49 F.4th 302, 310–11 (3d Cir. 2022) (cleaned up).

In a class action, the class's standing turns on the named plaintiffs' standing. *Neale*, 794 F.3d at 369 ("[S]o long as a named class representative has standing, a class action presents a valid case or controversy under Article III." (internal quotation marks omitted)).[8] So we evaluate whether the

---

[8] GEICO argues that the Supreme Court's holding in *TransUnion* that "[e]very class member must have Article III

Lewises meet these requirements. And because "standing is not dispensed in gross," we assess standing for each claim they bring. *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (internal quotation marks omitted).[9]

A

We begin with the condition-adjustment claim. GEICO argues that the Lewises lack standing to bring this claim because they suffered no concrete harm from its application of the condition adjustment. *See TransUnion*, 594 U.S. at 417 ("No concrete harm, no standing."). We agree.

To be concrete enough to confer standing, an injury must be "real, and not abstract." *Spokeo*, 578 U.S. at 340 (cleaned up). In other words, the asserted harm must "ha[ve] a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at 417 (internal quotation marks omitted).

standing in order to recover individual damages," 594 U.S. at 431, abrogated our holding in *Neale*. We recently rejected that argument. *Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 154–55 (3d Cir. 2023) (discussing the limited scope of *TransUnion*'s holding and "abid[ing] by *Neale*'s precept" that the named plaintiffs determine standing for class actions).

[9] While plaintiffs combine the condition-adjustment claim and the taxes-and-fees claim in one count of the complaint, we may separately assess aggregated claims for standing. *See Boley v. Universal Health Servs., Inc.*, 36 F.4th 124, 131 (3d Cir. 2022).

10

Financial harm is among "[t]he most obvious" concrete injuries. *Id.* at 425; *see also Cottrell v. Alcon Lab'ys*, 874 F.3d 154, 163 (3d Cir. 2017) ("[F]inancial harm is a classic and paradigmatic form of injury in fact." (cleaned up)). "If a defendant has caused . . . monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III." *TransUnion*, 594 U.S. at 425. "[A] loss of even a small amount of money is ordinarily" sufficient. *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017).

The Lewises allege that GEICO financially harmed them when it valued their car based on the condition adjustment. Specifically, they claim that CCC applied a $1,006 downward adjustment to each of the comparable cars in the MVR it prepared, that this adjustment reduced CCC's extrapolated valuation of their car by the same amount, and that GEICO used this depressed valuation to determine how much it would pay to resolve their insurance claim. As a result, they assert, GEICO paid them less than their car was worth—a quintessential financial injury.

Ordinarily, our standing inquiry would end there. *See Cottrell*, 874 F.3d at 163 ("[W]here a plaintiff alleges financial harm, standing is often assumed without discussion." (internal quotation marks omitted)). Here, however, both the complaint and the record undercut the Lewises' claim of financial harm.[10]

---

[10] Article III standing "may be challenged facially or factually." *Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 885 (3d Cir. 2020). Facial challenges "contest[] the sufficiency of the pleadings," meaning that "the court must only consider the allegations of the complaint and documents

11

True, CCC applied a condition adjustment that reduced its valuation of the comparable cars—and, by extension, the Lewises' car—by $1,006. But this adjustment was not the end of CCC's or GEICO's valuation process. After applying the downward adjustment, CCC boosted its valuation of the Lewises' car by $886 to account for its condition. With that valuation in hand, GEICO then negotiated with the Lewises, eventually applying a $1,200 upward "adjustment to settle" before paying their claim. App. 896. Even if the condition adjustment harmed the Lewises by $1,006, as they allege, these other adjustments more than offset it. The Lewises stake their claim on an isolated intermediate step within GEICO's valuation process, but they ultimately avoided any financial injury.

The Lewises urge us to ignore these later steps and treat the condition adjustment alone as a harm. But doing that would impermissibly divorce their standing to sue from any real-world financial injury. Under their theory, they would still have suffered financial harm even if GEICO had applied a $12,000 (or a $12,000,000) upward adjustment before settling their claim. This approach conflicts with our obligation to

referenced therein and attached thereto, in the light most favorable to the plaintiff." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) (internal quotation marks omitted). Factual challenges contest standing based on "the facts of the case," meaning the court "may look beyond the pleadings to ascertain the facts." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). The District Court treated GEICO's challenge to the Lewises' standing as a factual attack, but the complaint and the record support the same conclusion.

assess the Lewises' standing as of when they filed suit, *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008), by which point GEICO had applied the countervailing adjustments and paid the claim.

Although the Lewises argue that GEICO might have paid them even more if CCC had not applied the condition adjustment, this theory is too speculative to confer standing. *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 285 (3d Cir. 2018) (holding that a plaintiff "must allege facts that would permit a factfinder to value the purported injury at something more than zero dollars without resorting to mere conjecture"). Instead, "[w]e can only speculate—and speculation is not enough to sustain Article III standing." *Finkelman v. Nat'l Football League*, 810 F.3d 187, 200 (3d Cir. 2016). Conjecture about how a negotiation might have played out, without more, is not enough to support the Lewises' allegations of financial injury.

Lacking any financial harm, the Lewises' only remaining injury is a bare violation of New Jersey insurance rules, which they claim forbade GEICO's method of calculating ACV. But "bare procedural violations, divorced from any concrete harm . . . do[] not suffice for Article III standing." *TransUnion*, 594 U.S. at 440 (cleaned up); *cf. Lara v. First Nat'l Ins. Co. of Am.*, 25 F.4th 1134, 1140 (9th Cir. 2022) ("[C]alling Defendants' adjustments 'illegal' . . . [is] an argument for the [state] insurance commissioner . . . .").[11]

---

[11] In the alternative, the Lewises claim that they suffered an informational injury. But they failed to make this argument in

We cannot consider whether other insureds in New Jersey suffered a financial injury from GEICO's application of the condition adjustment. The standing inquiry "focus[es] . . . on whether the plaintiff is the proper party to bring [a] claim[]." *Cottrell*, 874 F.3d at 162. Here, the Lewises are not the proper parties. Therefore, we will remand with instructions for the District Court to dismiss the condition-adjustment claim for lack of standing. *See Boley v. Universal Health Servs., Inc.*, 36 F.4th 124, 130 (3d Cir. 2022) ("[A] lack of standing necessitates dismissal of claims, whether brought in a class action or in any other kind of suit.").

B

The taxes-and-fees claim fares better. The Lewises allege—and the record supports—that GEICO failed to compensate them for the taxes and fees necessary to replace their totaled car. They claim that their contract entitled them to more, and that GEICO's failure to live up to it cost them money. This financial harm satisfies the injury-in-fact requirement. *See Weichsel v. JP Morgan Chase Bank, N.A.*, 65 F.4th 105, 111 (3d Cir. 2023).

The Lewises also meet the causation and redressability requirements for Article III standing. The causation requirement demands a "connection between the injury-in-fact and a defendant's conduct." *Lutter v. JNESO*, 86 F.4th 111, 127 (3d Cir. 2023). And "[t]he redressability requirement ensures that the asserted injury-in-fact is capable of resolution in a manner consistent with the traditional understanding of the

---

the District Court, so they forfeited it. *See Holland v. Warden Canaan USP*, 998 F.3d 70, 75 (3d Cir. 2021).

14

judicial process." *Id.* at 128. The Lewises have shown that their alleged financial injury stems from GEICO's pre-2020 practice of declining to pay taxes and fees to lessee insureds, and they ask for damages, which "are a recognized form of judicial redress for past injuries." *Id.* They therefore have standing to bring their taxes-and-fees claim.

## IV

Because the Lewises have standing to bring their taxes-and-fees claim, we must next decide whether the District Court abused its discretion in certifying a class based on that claim. We conclude that it did not.

GEICO challenges the District Court's certification of the taxes-and-fees class on only one ground: that the class is not sufficiently ascertainable.[12] "A plaintiff seeking certification of a Rule 23(b)(3) class must prove by a preponderance of the evidence that the class is ascertainable." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015); *see also In re Niaspan Antitrust Litig.*, 67 F.4th 118, 133 (3d Cir. 2023) ("Rule 23(b)(3) has an implicit requirement that class members be ascertainable."). To prove ascertainability, the Lewises must show that "(1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Byrd*, 784 F.3d at 163 (cleaned up).

---

[12] GEICO raises no other arguments about the taxes-and-fees class in its opening brief and acknowledged at oral argument that its challenge is limited to ascertainability.

15

The District Court did not abuse its discretion in holding that the Lewises met these requirements. Objective criteria define the class, which covers GEICO insureds in New Jersey whose settlement "did not include applicable sales tax, title fees, or license plate fees." App. 65. As to administrative feasibility, the Lewises presented evidence that GEICO systematically underpaid taxes and fees before 2020 and that a review of claim files and other sources could identify insureds whose settlements did not include taxes and fees.

GEICO protests that it can only determine which insureds were affected by the taxes and fees underpayment "through a file-by-file review" of the class members. App. 677. But "matching of records is precisely the sort of exercise we have found sufficiently administrable to satisfy ascertainability in other cases." *Kelly v. RealPage Inc.*, 47 F.4th 202, 223 (3d Cir. 2022). Indeed, we have held that "a straightforward 'yes-or-no' review of existing records to identify class members is administratively feasible even if it requires review of individual records with cross-referencing of voluminous data from multiple sources." *Id.* at 224. That type of review is what plaintiffs proposed and the District Court endorsed.[13] The District Court therefore did not abuse its

---

[13] The District Court relied on *Hargrove v. Sleepy's LLC*, 974 F.3d 467 (3d Cir. 2020), to hold that defects in GEICO's records requiring individualized review did not preclude certification because they "are of GEICO's own making." App. 81. GEICO argues that this was error because the holding in *Hargrove* is limited to employment cases where the defendant failed to keep records as required by law. But GEICO reads that case too narrowly. We have relied on

---

16

discretion when it found that the taxes-and-fees class was ascertainable.

*    *    *

For the reasons stated above, we will affirm the part of the District Court's order certifying the taxes-and-fees class, but we will vacate the part of the District Court's order certifying the condition-adjustment class and remand with instructions to dismiss that claim.

---

*Hargrove* outside of the employment context for the proposition that a defendant's faulty recordkeeping will not preclude certification of an otherwise ascertainable class. *See RealPage*, 47 F.4th at 223.