**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-3371
_____

STUART WEICHSEL, individually and on behalf of all
others similarly situated,
Appellant

v.

JP MORGAN CHASE BANK, N.A.
_____

On Appeal from the United States District Court
for the District of New Jersey
(No. 2-20-cv-17849)
U.S. District Judge:  Honorable Madeline C. Arleo
_____

Argued on March 8, 2023
_____

Before: SHWARTZ, BIBAS, and AMBRO, Circuit Judges.

(Filed: April 11, 2023)

Brian L. Bromberg [**ARGUED**]
Bromberg Law Office
352 Rutland Road
#1
Brooklyn, NY 11225

        Counsel for Appellant

Olivia Greene
Noah A. Levine [**ARGUED**]
Alan E. Schoenfeld
WilmerHale
7 World Trade Center
250 Greenwich Street
New York, NY 10007

        Counsel for Appellee

_____

OPINION OF THE COURT
_____


**SHWARTZ**, <u>Circuit Judge</u>.

Plaintiff Stuart Weichsel sued JP Morgan Chase Bank, N.A. ("Chase") for its alleged failure to itemize the annual fees on his credit card renewal notice in violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq. Although Weichsel has standing, he failed to state a TILA violation because there is no requirement to itemize annual fees on

renewal notices. Therefore, the District Court correctly dismissed his claim, and we will affirm.

I

A

TILA, and its implementing regulation, Regulation Z (12 C.F.R. § 1026), require creditors like Chase to make a series of disclosures before and during the creditor-borrower relationship. When a creditor solicits a consumer, and at the time a consumer opens a credit account, a creditor must disclose certain information, including any annual and periodic fees, "in the form of a table with headings," 15 U.S.C. § 1637(c)(1)(A)(ii)(I); 12 C.F.R. § 1026.60(a)(2)(i); 12 C.F.R. § 1026.6(b)(1), (2)(ii)(A); 12 C.F.R. § 1026.60(b)(2)(i). After the credit account is opened, the creditor must make periodic disclosures each billing statement, including the charges and fees imposed during the billing cycle. 15 U.S.C. § 1637(b)(4); 12 C.F.R. § 1026.7(b)(6)(iii). TILA and Regulation Z require that the charges and fees on these periodic statements be "itemized." 15 U.S.C. § 1637(b)(4); 12 C.F.R. § 1026.7(b)(6)(iii).[1]

---

[1] The statute requires disclosure of "[t]he amount of any finance charge added to the account during the [billing] period, itemized to show the amounts, if any, due to the application of percentage rates and the amount, if any, imposed as a minimum or fixed charge." 15 U.S.C. § 1637(b)(4). The regulation provides:

> Charges imposed as part of the plan other than charges attributable to periodic interest rates must be grouped

TILA also requires additional disclosures before a credit account is renewed.  15 U.S.C. § 1637(d), (i); 12 C.F.R. § 1026.9.  If a creditor imposes annual fees to renew an account, then the creditor must send the borrower a notice at least thirty days before the account renewal date (or one billing cycle before the mailing of the billing statement charging the annual fee).  15 U.S.C. § 1637(d)(1); 12 C.F.R. § 1026.9(e)(1).[2]  This renewal notice must provide "clear and conspicuous disclosure of," 15 U.S.C. § 1637(d)(1), among other things, "[a]ny annual fee, other periodic fee, or membership fee imposed for the issuance or availability of a credit card, including any account maintenance fee or other charge imposed based on activity or inactivity for the account during the billing cycle," 15 U.S.C. § 1637(c)(1)(A)(ii)(I) (referenced in § 1637(d)(1)(B)); see also 12 C.F.R. § 1026.60(b)(2)(i) (referenced in § 1026.9(e)(1)(i)) (similar).[3]

together under the heading Fees, identified consistent with the feature or type, and itemized, and a total of charges, using the term Fees, must be disclosed for the statement period and calendar year to date, using a format substantially similar to Sample G–18(A) in appendix G to this part.

12 C.F.R. § 1026.7(b)(6)(iii) (emphasis omitted).

[2] Regulation Z permits creditors to include the renewal notice in the borrower's monthly billing statement.  12 C.F.R. § 1026.9(e)(2).

[3] Unlike account-opening disclosures, the fees in a renewal notice "need not appear in a tabular format."  12 C.F.R. § 1026, Supp. I, Part 1, cmt. 9(e), ¶ 2.

B

Plaintiff holds a credit card account issued by Chase.[4] A cardmember agreement governs the account.[5] The agreement discloses that Plaintiff's account has an "Annual Membership Fee" that will be added to his billing statement once a year. App. 36. The agreement also states Plaintiff may ask Chase to issue an additional card for an authorized user. The cardmember agreement includes a "Rates and Fees Table" that discloses the annual membership fee, and explains the fee is $450 plus $75 for each additional card. App. 33. Plaintiff does not dispute that his total annual fee was $525 because he had "previously opted to include one additional authorized user" on his credit card account. Appellant's Br. at 3.

Plaintiff alleges that his December 2019 billing statement included a renewal notice. The notice appeared at the bottom of the first page of the statement under a title written in large font and all capitals: "YOUR ACCOUNT MESSAGES." App. 25, 52. The message stated that Plaintiff's "annual membership fee in the amount of $525.00 will be billed on 02/01/2020" and directed him to "[p]lease see the Annual Renewal Notice section of your statement disclosures for more information." App. 25, 52. That section

---

[4] All facts are drawn from Plaintiff's amended complaint.

[5] Because the agreement and other documents discussed herein are integral to the complaint, we may consider them. Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014).

5

appeared on the following page and set forth the annual fee, including how it would be charged and how Plaintiff could avoid it. The renewal notice did not, however, specify that the total annual fee of $525 comprised $450 for the primary cardholder and $75 for the additional card for an authorized user. Plaintiff does not dispute that his total annual fee was $525 but rather complains that the renewal notice did not "individually itemize" the fee's two components: the base fee of $450 and the additional fee of $75. App. 16.

The annual membership fee later appeared as two separate fees on Plaintiff's February 2020 billing statement. The billing statement contained one charge for $450 and another for $75, and each was labeled "ANNUAL MEMBERSHIP FEE." App. 59. The statement advised Plaintiff, on a separate page, that the "annual membership fee is non-refundable unless you notify us that you wish to close your account within 30 days or one billing cycle (whichever is less) after we provide the statement on which the annual membership fee is billed." App. 58. Plaintiff paid the full $525 fee in February 2020 but now claims that "[h]ad [he] been aware" he could retain access to his credit card for $450, he would have paid only that amount. App. 21.

Plaintiff filed a putative class action complaint, alleging that Chase's failure to itemize each component of the renewal fee in the December 2019 renewal notice violated TILA and Regulation Z. Plaintiff seeks $1 million on behalf of himself and the putative class, or up to $5,000 in individual statutory damages. Chase filed a motion to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), for lack of Article III standing, and 12(b)(6), for failure to state a claim upon which relief can be granted.

6

The District Court granted the motion, holding that Plaintiff had standing because he suffered an economic injury based on his assertion that he would not have paid the full $525 if he had known it included the additional card fee, but he had failed to allege a TILA violation because neither "TILA nor Regulation Z expressly mandates disclosure of each individual component of the total annual fee for a credit card account in a renewal notice," App. 6. The Court observed that Regulation Z requires itemization of fees on other disclosures, such as fees reported on a billing statement, but lacks such a requirement in the provisions governing renewal notices, which "strongly suggests that no such requirement was intended." App. 6.

Plaintiff appeals.

## II[6]

### A

We first address Plaintiff's standing. Article III of the Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2203 (2021). To satisfy the "case-or-controversy requirement," a plaintiff must establish

---

[6] Plaintiff invoked jurisdiction in the District Court under 28 U.S.C. §§ 1331 and 1337 and under 15 U.S.C. § 1640(e). Standing is a jurisdictional question that we review de novo. Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 266, 280 (3d Cir. 2014). Similarly, we review a district court's decision to grant a motion to dismiss de novo. Krieger v. Bank of Am., N.A., 890 F.3d 429, 437 (3d Cir. 2018).

7

"standing to sue." Raines v. Byrd, 521 U.S. 811, 818 (1997). To do so at the pleading stage, a plaintiff must adequately allege that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016). "In assessing whether a plaintiff has carried this burden, we separate our standing inquiry from any assessment of the merits of the plaintiff's claim," and "assume for the purposes of our standing inquiry that a plaintiff has stated valid legal claims." Cottrell v. Alcon Lab'ys, 874 F.3d 154, 162 (3d Cir. 2017).

To establish injury in fact, a plaintiff must assert that he suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent." Spokeo, 578 U.S. at 339 (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)). To be concrete, the injury must be "real, and not abstract," id. at 340 (internal quotation marks omitted), "even in the context of a statutory violation," id. at 341. An alleged injury is "particularized" when it has "affect[ed] the [P]laintiff in a personal and individual way." Id. at 339 (quoting Lujan, 504 U.S. at 560 n.1).

Plaintiff alleges that he suffered a $75 economic injury by paying the full $525 renewal fee.[7] Typically, a plaintiff's

_____

[7] Plaintiff's complaint also suggests a theory of informational injury, but he failed to raise this basis for standing in his briefs and so he has not preserved this argument. See Potter v. Cozen & O'Connor, 46 F.4th 148, 156 (3d Cir. 2022); Nichols v. City of Rehoboth Beach, 836 F.3d 275, 282 n.1 (3d Cir. 2016).

8

allegation of financial harm satisfies "each of [the] components [of the injury-in-fact requirement]." Cottrell, 874 F.3d at 163. By alleging monetary harm of $75, Plaintiff has satisfied the injury-in-fact requirement. See Czyzewski v. Jevic Holding Corp., 580 U.S. 451, 464 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'").

Plaintiff also satisfies the traceability element. It requires that "the alleged injury-in-fact is causally connected and traceable to an action of the defendant[]." Edmonson v. Lincoln Nat'l Life Ins. Co., 725 F.3d 406, 418 (3d Cir. 2013) (alteration in original) (quoting Pitt News v. Fisher, 215 F.3d 354, 360 (3d Cir. 2000)). "We have described this requirement as akin to 'but for' causation and found the traceability requirement met even where the conduct in question might not have been a proximate cause of the harm, due to intervening events." Id. Plaintiff has adequately alleged that his injury is "causally connected" to Chase's conduct. Plaintiff asserts that (1) he received and reviewed the renewal notice, which identified the "pending annual membership fee of $525.00," App. 15; (2) he subjectively "understood that the Renewal Notice . . . represented that this fee had to be paid in its entirety for continued availability of credit," App. 20; (3) he "paid the $525.00 fee," App. 21; and (4) had he "been aware" of the separate $75 additional card fee, he would not have paid it, App. 21. Plaintiff has thus plausibly alleged that Chase caused him economic injury by failing to itemize the annual fees.

It is immaterial to the traceability requirement that the February 2020 credit card statement advised Plaintiff he could avoid the additional charge by notifying Chase that he "wished to close [his] account within 30 days." App. 58. Even though

9

Plaintiff "could have prevented" the harm from occurring by taking a particular action, such as cancelling one or both cards assigned to the account either upon receipt of the December 2019 renewal notice or when he received the February 2020 billing statement, his injury remains fairly traceable to the issuance of the non-itemized notice that required payment of $525 to keep the account open. Edmondson, 725 F.3d at 418. Therefore, Plaintiff has satisfied the traceability requirement.

Plaintiff's injury is also redressable. This element is established by "showing that the injury will be redressed by a favorable decision." Const. Party of Pa. v. Aichele, 757 F.3d 347, 368 (3d Cir. 2014) (internal quotation marks omitted). If Plaintiff prevails, his injury could be redressed by a favorable decision because a court could award him actual and statutory damages, both of which TILA authorizes. 15 U.S.C. § 1640(a) (authorizing actual damages and statutory damages).

Chase counters by arguing that Plaintiff's allegations fall short because his injury is not tied to the statute's "underlying concrete interest." Resp. Br. at 17 (quoting Kamal v. J. Crew Grp., Inc., 918 F.3d 102, 112 (3d Cir. 2019)). That is, he "makes no allegation whatsoever that Chase's notice failed to protect the interests it is designed to serve—to ensure the cardholder is adequately reminded of a coming obligation." Id. at 16.

Chase is mistaken. Its argument conflates (1) standing and causes of action as well as (2) necessary and sufficient conditions. First, while a statutory violation gives Plaintiff his cause of action, 15 U.S.C. § 1640, that statutory cause of action is distinct from his Article III injury, see TransUnion, 141 S. Ct. at 2214. Because he alleges a monetary injury, he need not

10

allege any additional injury with a connection to the statute's purpose. Second, though a procedural violation might confer standing to sue if there is an impact on an underlying concrete interest, we need not decide whether Plaintiff here has standing under that theory because a monetary injury is always enough. Plaintiff has plausibly traced a connection between the purported procedural violation and his monetary injury, and so he has standing. See id. at 2205 (requiring "downstream consequences from failing to receive the required information").

Because Plaintiff has plausibly alleged that he suffered an injury in fact that is fairly traceable to Chase's conduct and could be redressed by a favorable decision, he has established Article III standing to bring this suit.

B

Although Plaintiff has standing, he has failed to allege that the Chase renewal notice violated TILA or Regulation Z. Under TILA and Regulation Z, a renewal notice must contain "clear and conspicuous disclosure[s]" of the following: (1) "the date by which, the month by which, or the billing period at the close of which, the account will expire if not renewed"; (2) "[a]ny annual fee, other periodic fee, or membership fee imposed for the issuance or availability of a credit card, including any account maintenance fee or other charge imposed based on activity or inactivity for the account during the billing cycle";[8] and (3) "the method by which the

---

[8] The obligation to disclose the fee is found in the statute's reference to two other subsections. The statute provides that a renewal notice must disclose "the information

11

consumer may terminate continued credit availability under the account." 15 U.S.C. § 1637(d)(1); see also 12 C.F.R. § 1026.9(e)(1) (setting forth substantially similar requirements). The renewal notice regulation further provides that a renewal notice must "reflect the terms actually in effect at the time of renewal." 12 C.F.R. § 1026, Supp. I, Part 1, cmt. 9(e), ¶ 3.

There is no dispute that the notice provided the date on which the account would close if not renewed and the method

_____

described in subsection (c)(1)(A) or (c)(4)(A) that would apply if the account were renewed . . . ." 15 U.S.C. § 1637(d)(1)(B). Those two "subsection[s]" are contained in the provisions that govern account-opening disclosures. Subsection (c)(1)(A) governs credit cards and (c)(4)(A) covers "charge cards." Both require disclosure of "[a]ny annual fee, other periodic fee, or membership fee imposed for the issuance or availability of a credit card, including any account maintenance fee or other charge imposed based on activity or inactivity for the account during the billing cycle." 15 U.S.C. § 1637(c)(1)(A)(ii)(I); see also 15 U.S.C. § 1637(c)(4)(A)(i) (similar). The regulation governing renewal notices imposes a nearly identical requirement by referencing the regulations governing application and solicitation disclosures. 12 C.F.R. § 1026.9(e)(1)(i) (requiring that a renewal notice include the "disclosures contained in § 1026.60(b)(1) through (b)(7) that would apply if the account were renewed"); 12 C.F.R. § 1026.60(b)(2)(i) (requiring disclosure of "[a]ny annual or other periodic fee that may be imposed for the issuance or availability of a credit or charge card, including any fee based on account activity or inactivity; how frequently it will be imposed; and the annualized amount of the fee").

for cancelling Plaintiff's account. Moreover, the notice disclosed the terms actually in effect at the time of renewal because, as stated in Plaintiff's cardholder agreement, Plaintiff was required to pay an annual fee of $525 for the primary card and the additional card for an authorized user. The notice therefore clearly and conspicuously disclosed the "annual fee . . . imposed for the issuance or availability of a credit card," 15 U.S.C. § 1637(c)(1)(A)(ii)(I); 12 C.F.R. § 1026.60(b)(2)(i), as required under "the terms actually in effect at the time of renewal," 12 C.F.R. § 1026, Supp. I, Part 1, cmt. 9(e), ¶ 3.

Plaintiff's contention that TILA requires itemization of each component of the renewal fee lacks any basis. First, while there is an itemization requirement in the statutes and regulations governing periodic disclosures, the same requirement is not included in the statutes and regulations applicable to renewal notices. See 12 C.F.R. § 1026.7(b)(6)(iii) (requiring that each separate "[c]harge[] imposed as part of the plan" during a billing period must be "grouped together . . . and itemized"); see also 15 U.S.C. § 1637(b)(4) (similar). Where a statute or regulation uses "specific language in one [provision] but different language in another," the Court "presume[s] different meanings were intended." Doe v. Mercy Cath. Med. Ctr., 850 F.3d 545, 554 (3d Cir. 2017) (citing Sosa v. Alvarez-Machain, 542 U.S. 692, 711 n.9 (2004)). The lack of an express itemization requirement in the renewal notice provisions indicates that no such requirement was intended.[9]

---

[9] Similarly, the official commentary for the renewal notice regulation provides that "[i]f a renewal fee is billed more often than annually, the renewal notice should be provided each time the fee is billed" but "the fee need not be disclosed

The Supreme Court's instruction to construe TILA narrowly bolsters this conclusion. The Court has stated that TILA and its regulations reflect a policy that "meaningful disclosure" does not necessarily mean "more disclosure," Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 568 (1980) (emphasis omitted), and has further cautioned that "creditors need sure guidance through the 'highly technical' [TILA]," id. at 566. Accordingly, courts should not "read into the statute the necessity for particularized disclosure beyond what the plain language of the statute requires." Singer v. Am. Express Centurion Bank, No. 17-CV-2507, 2018 WL 2138626, at *4 (S.D.N.Y. May 9, 2018).

Second, renewal notices are not subject to the same disclosure requirements as solicitations and applications, which are provided to consumers before the parties have any relationship. At that point, a solicitation or application must disclose "optional" additional card fees because the creditor does not yet know whether the consumer will add an authorized user to the account. 12 C.F.R. § 1026, Supp. I, Part 4, cmt. 60(b)(2), ¶ 2. At account renewal, however, TILA and Regulation Z require only that a creditor disclose terms "that would apply if the account were renewed." 15 U.S.C. § 1637(d)(1)(B); 12 C.F.R. § 1026.9(e)(i); see also 12 C.F.R. § 1026, Supp. I, Part 1, cmt. 9(e), ¶ 3 (requiring that a renewal notice "reflect the terms actually in effect at the time of

as an annualized amount." 12 C.F.R. § 1026, Supp. I, Part 1, cmt. 9(e), ¶ 5. While this does not expressly require itemization as other parts of the regulation do, it demonstrates that the agency was sensitive to circumstances in which more granular disclosure is necessary.

renewal").[10]

This conclusion is consistent with the purpose of TILA and Regulation Z. Before a consumer opens his account, he needs more detailed disclosures to be fully informed of the obligations he would take on. Household Credit Servs., Inc. v. Pfennig, 541 U.S. 232, 243 (2004). At account renewal, the "initial credit choice" has been made and thus detailed disclosures do not "particularly enhance[]" TILA's "primary goal[]" of ensuring that consumers are aware of their responsibilities when they first enter a credit agreement. Id. (quoting 45 Fed. Reg. 80649 (1980)).

Thus, neither TILA nor Regulation Z required Chase to itemize in the renewal notice the fees to be paid to keep Plaintiff's account open.

III

For these reasons, we will affirm.

---

[10] Moreover, an argument that the words "a credit card" in the regulation means that the credit card company needs to provide separate information about each card ignores Regulation Z's rules of construction, which provide that "[w]here appropriate, the singular form of a word includes the plural form." 12 C.F.R. § 1026.2(b)(1). Applying that rule, the renewal regulation is properly understood as requiring disclosure of "[a]ny annual fee[s]" for "credit or charge card[s]" that would apply "if the account were renewed." 12 C.F.R. § 1026.9(e)(1)(i) (citing 12 C.F.R. § 1026.60(b)(2)(i)); 12 C.F.R. § 1026.60(b)(2)(i).